## A89A0897. MARTIN v. THE STATE.
(388 SE2d 420)

BIRDSONG, Judge.

Appellant Matthew Martin appeals his conviction of armed robbery and burglary.

During the night of October 15-16, 1986, someone gained entry to the Easter Seal Center in Dublin, Georgia, by breaking a window. There were no witnesses, but appellant's fingerprints were found on both sides of the broken glass. On the afternoon of October 16, 1986, a man armed with a pistol robbed an insurance office in Dublin. Later that day, an insurance company employee identified Martin as the robber.

Martin was convicted of both crimes. Upon his motion, however, Martin was granted a new trial. He was retried and was again convicted. He now appeals alleging that his identification by the victim was tainted, asserting that he was erroneously denied a mistrial on various grounds and contending that he was denied his right to effective assistance of counsel. *Held:*

1. Martin asserts that the trial court erred by denying his motion in limine to exclude his identification by the insurance company employee. The employee was called to the police station to see if she could identify a robbery suspect. She first looked at two "mug books" and could not find the man. (Martin's photograph was not included in the books of photographs.) Thereafter, the victim was twice requested to look at the same man (Martin) to see if she could identify him, but she could not. Finally, after Martin put a white piece of paper over the lower part of his face like the man who robbed her, and after she heard him talk, she identified Martin as the man who robbed her.

Martin argues these procedures were extremely suggestive, and that the employee identified him only after the police twice suggested that Martin was the man who robbed her. Thus, he asserts, the show-up was impermissibly suggestive, see *Towns v. State*, 136 Ga. App. 467 (221 SE2d 631), and created a substantial likelihood of an irreparable misidentification. Further, Martin argues that his in-court iden-

tification was tainted by the earlier show-up. *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401). Therefore, he asserts that his motion in limine to exclude testimony concerning the show-up and the in-court identification should have been granted.

The test for determining whether a due process violation occurred in cases such as this "is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *McCoy v. State*, 190 Ga. App. 258 (3) (378 SE2d 888). The considerations in evaluating the likelihood of misidentification include: (a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the confrontation, and (e) the length of time between the crime and the confrontation. *Neil v. Biggers*, supra.

Considering these factors, we conclude that under the "totality of the circumstances," *Neil v. Biggers*, supra, the procedures used in this case to identify Martin were not so impermissibly suggestive as to cause a very substantial likelihood of irreparable misidentification. (a) Although the victim only saw the man who robbed her for a short time, the robbery took place in the middle of the day, indoors, and in a well-lighted office. The victim also testified that she could see well, and that she and the robber were very close together. The robber's face was partially masked, but except for that, the victim had an excellent opportunity to see the man who robbed her. (b) Her attention was focused entirely on the robber, and she was not distracted by other events occurring at the time. (c) The description of the robber given to the police by the victim shortly after the crime accurately described Martin. Although Martin argues that the description given the police was so general that it could include large numbers of black men, the description given closely described Martin's physical characteristics. (d) The victim displayed a high degree of certainty in her identification of Martin. Although she did not pick anyone from the two mug books, the books did not include Martin's photograph. Further, although she did not identify Martin when she saw him brought to the police station or when she first saw him in the interview room, she made no misidentifications and she explained that she could not identify the man when he entered the police station because she could not see him very well. When she next saw the man in the interview room, she thought that the voice "sounded very much the same," but she did not identify him at first because she was looking at the full face of the man and that was not how she saw him at the time of the robbery. When she saw him with a handkerchief covering part of his face, however, "there was no question in [her] mind that it was the same man." She testified that the eyes were the same and that there

was something about the way the man tilted his head. (e) Finally, we note that there was only about a two-hour interval between the robbery and the show-up at the police station, and that there is no indication in the record that the victim suffered any lapse of memory in the interval. Considering these factors in light of the totality of the circumstances, we find there is no substantial likelihood of an irreparable misidentification, and accordingly, it was not error for the trial court to deny Martin's motion in limine to exclude the evidence of the out-of-court identification.

Assuming arguendo that some taint occurred in the pretrial identification, a witness' in-court identification may be admitted if it has an "independent origin." *McCoy v. State,* supra. See *Jones v. State,* 258 Ga. 25 (3) (365 SE2d 263). Again, considering the totality of the circumstances discussed above as well as the witness' ability to identify appellant notwithstanding the passage of time until trial, appellant's change in appearance, and appellant's efforts to make the in-court identification difficult, we find that the employee's in-court identification had an independent origin.

2. Appellant's second and sixth enumerations of error concern the conduct of one of the State's witnesses, the investigating police officer. The officer, who was allowed to stay in the courtroom to assist the prosecutor, is alleged to have violated the witness sequestration rule by discussing the case with the victimized employee before her testimony and by placing appellant's character in question by referring to the witness' testimony in appellant's first trial. Appellant asserts that either of these events warranted the granting of his motion for mistrial.

Appellant argues in support of enumeration 2 that a mistrial was required because the officer told the employee that he believed appellant might have people in the courtroom who looked like him. This conversation did not violate the sequestration rule. The purpose of the rule is to keep the testimony of one witness from influencing the testimony of other witnesses. *Rogers v. State,* 257 Ga. 590 (4) (361 SE2d 814). The discussion did not concern the testimony of the officer, and thus the officer's testimony could not have influenced the employee's testimony. Accordingly, the sequestration rule was not violated. It was not error to deny any motion for mistrial specifically grounded on a sequestration rule violation.

The sixth enumeration of error asserts that it was error to deny appellant's motion for a mistrial when the same officer allegedly introduced appellant's character in question and prejudiced him in front of the jury by referring to testimony in appellant's first trial. The officer's answer was made in the context of questions asked by appellant's counsel concerning responses made by the witness at appellant's first trial. Although appellant's attorney carefully referred to

the first trial as a previous hearing, the witness at one point answered a question about his previous testimony by saying "at the time of the last trial when I was asked that question. . . ." This apparently inadvertent comment in the course of cross-examination designed to impeach him does not rise to the level of misconduct condemned in *Boyd v. State*, 146 Ga. App. 359 (246 SE2d 396). Although the comment was contrary to the agreement reached on how to describe the first trial, we do not find from the context of the comment that it was made with the intention of prejudicing the jury against appellant. Further, the response was to a question by appellant's trial defense counsel who had earlier introduced the subject of the testimony given at the first trial. Assuming without deciding that the officer's testimony could be construed to have placed appellant's character in issue, it appears that the responsibility for this rests with appellant's counsel since the answer was to his questioning. "Trial counsel may not take chances in propounding questions which may elicit damaging answers and then demand a mistrial on the basis of the answer. *Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984). Furthermore, the decision of whether to grant a mistrial is within the sound discretion of the trial court and his ruling will not be disturbed absent an abuse of discretion. *Ladson v. State*, 248 Ga. 470 (285 SE2d 508) (1981)." *Buxton v. State*, 253 Ga. 137 (3) (317 SE2d 538). There was no error in denying appellant's motion for mistrial. Accordingly, enumerations of error 2 and 6 are without merit.

3. Appellant asserts that the trial court erred by failing to grant a mistrial because the State allegedly used its peremptory strikes in a racially prejudicial manner. See generally *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69). The State argues that appellant's *Batson* challenge was untimely because it was made after the jury was sworn. This contention is not supported by the transcript. The jury was not sworn until after appellant's challenge was made and denied. The record before us is not sufficient to determine whether a prima facie case of *Batson* error was established. "Pretermitting whether the defendant made a prima facie showing of discrimination, see *Williams v. State*, 258 Ga. 80, 81 (3) (365 SE2d 408) (1988) and *Aldridge v. State*, 258 Ga. 75, 76 (4) (365 SE2d 111) (1988), the record amply supports the trial court's finding that the prosecutor used peremptory challenges to remove those jurors for legitimate, racially-neutral reasons. *Henderson v. State*, 257 Ga. 434, 436 (3) (360 SE2d 263) (1987)." *Lee v. State*, 258 Ga. 481, 482-483 (371 SE2d 389). This enumeration of error is without merit.

4. Appellant contends the trial court's refusal to grant a mistrial when the prosecutor said in closing argument that: "Matthew Martin has not presented any evidence to show that he ever set foot at Easter Seals, except the night he burglarized this place. There is no evidence

in this case. It is unrefuted that he had not been there during the daytime. You can't just guess that he might have been. They've got to produce evidence to that fact if they want you to consider it. . . ." Following appellant's objection to these remarks, his motion for mistrial, and curative instructions by the trial court, the prosecutor made the following argument: "Ladies and gentlemen, I want to make something clear. As the [c]ourt told you, the [d]efendant does not have to produce evidence, but fortunately this is America. It's not Russia where they don't have a right to provide a defense. In this country, they can produce evidence and they have failed to do so in this case. They have done nothing to rebut or rebuke the evidence that the State of Georgia has produced in this case. That is why I'm saying and I would like. . . ." Appellant renewed his motion for mistrial, and the trial court again denied the motion.

Appellant contends that this argument improperly commented upon appellant not testifying, improperly argued that he had a burden to present refuting evidence, and improperly argued that he had a burden to produce any evidence. Appellant's contentions present two issues: whether the prosecutor improperly commented upon appellant's failure to testify, and whether the prosecutor improperly commented upon appellant's failure to rebut or refute the evidence produced by the State.

We must consider the prosecutor's comments within their context in the argument. See generally *Russell v. State*, 184 Ga. App. 657, 658 (362 SE2d 392) (physical precedent only). At this point the prosecutor was discussing the state of the evidence on the burglary count, and in particular, was addressing the evidence showing that appellant's fingerprints were found in a location that only the burglar could have placed them. He had addressed appellant's defense counsel's efforts to gain from the State's witnesses an explanation for fingerprints and then finally launched into the comments which we now consider.

"Though the prosecutor may not comment on a *defendant's* failure to testify, ' "[i]t is not error, nor is it improper for the prosecutor to reflect upon the failure of the *defense* to present any evidence to rebut the proof adduced by the [S]tate." [Cits.]' " (Second emphasis supplied.) *Smith v. State*, 245 Ga. 205, 207 (264 SE2d 15). Thus, there was no error if the prosecutor's comments in this case were merely directed toward appellant's failure to rebut the State's evidence against him. *Jones v. State*, 168 Ga. App. 652, 653 (310 SE2d 17); *Hall v. State*, 163 Ga. App. 515, 517 (295 SE2d 194).

Consequently, we must test to determine whether the prosecutor's comments were directed toward appellant's failure to testify. Our Supreme Court stated the test to be used in such cases in *Ranger v. State*, 249 Ga. 315, 319 (290 SE2d 63): " 'To reverse for improper

comment by the prosecutor, we must find one of two things: that "the prosecutor's manifest intention was to comment upon the accused's failure to testify" or that the remark was "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." [Citations omitted.]' " The prosecutor in this case added another dimension to the usual problem by initially referring to appellant directly by name. Although the better practice clearly would be not to do so, the reference to appellant by name rather than as the "defendant" or the "defense," standing alone is not controlling. See *Hall v. State*, 176 Ga. App. 428, 431-432 (336 SE2d 291).

We must still determine whether the argument impermissibly commented upon appellant's failure to testify. "Commenting on the deficiencies in the *defense* does not always constitute a forbidden comment on the *defendant's* failure to testify, as a defendant's testimony is not a *sine qua non* of a defense." *Russell v. State*, supra. In this instance, the prosecutor argued that the trial defense counsel had been unable through cross-examination of the witnesses from the office burglarized to establish any explanation for appellant's fingerprints to be in the office. The comment complained of was the next logical step in the argument, i.e., that the defense also had not presented any other evidence giving an explanation for appellant's fingerprints being there.

Further, that was the explanation given by the prosecutor to the trial court for this line of questioning. Accordingly, "[i]n the instant case, it is clear from the context of the prosecutor's statement and the explanation he offered to the court that he did not intend to comment upon the accused's failure to testify. . . ." *Lobdell v. State*, 256 Ga. 769, 775 (353 SE2d 799). We thus find that the prosecutor's comment did not reflect a "manifest intention" to comment upon appellant not testifying, nor do we find that the comments were such that the jury "would naturally and necessarily" find them to be so. *Ranger v. State*, supra. "In the context of the prosecutor's argument it was not improper to argue that the defense did not present evidence to refute the [S]tate's case or to rebut the . . . [S]tate's witnesses." *Lowe v. State*, 253 Ga. 308, 310 (319 SE2d 834). The prosecutor's argument "was simply commenting on the fact that the defense did not present evidence to refute the State's case, not to point to the conclusion of the defendant's guilt because of his failure to testify." *Thomas v. State*, 174 Ga. App. 824, 825 (331 SE2d 644). Moreover, there is no merit in appellant's contention that the prosecutor's argument impermissibly shifted the burden of proof or created a burden to produce evidence on appellant. See *Valenzuela v. State*, 157 Ga. App. 247, 250 (277 SE2d 56). The prosecutor's argument asserted that the jurors must base their verdict on the evidence presented and not guesswork

or conjecture.

Finally, " '[t]he trial judge in passing upon a motion for mistrial on account of alleged improper argument . . . is vested with a broad and sound discretion, and his ruling will not be controlled by this court unless manifestly abused.' [Cit.]" *Casey v. State,* 167 Ga. App. 437, 439 (306 SE2d 683). The trial judge in this case took the action necessary to make sure that the prosecutor's argument did not erroneously shift any burden to appellant by promptly and accurately granting appropriate curative instructions. We find no abuse of discretion in denying appellant's motion.

5. Next, appellant asserts that he was denied his right to effective assistance of counsel. This matter was raised in appellant's motion for new trial, was contested in the trial court by new counsel, and was decided against appellant.

Appellant's burden was to establish that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Brown v. State,* 257 Ga. 277, 278 (357 SE2d 590). He had to show that there was a reasonable probability that the result of the trial would have been different, but for his counsel's ineffective performance, *Baggett v. State,* 257 Ga. 735 (363 SE2d 257), and he had to overcome the strong presumption that his counsel's representation was effective. *Clarington v. State,* 178 Ga. App. 663, 667 (344 SE2d 485).

Review of the transcript of the trial and the hearing on the motion clearly shows that appellant has failed to carry his burden. Appellant's trial defense counsel vigorously contested the State's case, and forcefully represented appellant. While the point is not determinative, we note that frequently during the trial, the trial judge inquired about appellant's satisfaction with his attorney's performance, and was repeatedly assured that he was satisfied. The specific allegations against the defense counsel were considered in the trial court and were adequately explained. Given the strength of the case against appellant, the defense counsel's performance more than exceeded the standards established. Appellant's trial defense counsel was not deficient and certainly did not prejudice the defense. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674). This enumeration of error is without merit.

6. Appellant's fifth enumeration of error was abandoned on appeal.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 17, 1989.

*Henry G. Bozeman,* for appellant.

*Ralph M. Walke, District Attorney, Tyson Blue, Assistant District Attorney,* for appellee.