## A00A0193. CRUMPTON v. THE STATE.
### (534 SE2d 809)

RUFFIN, Judge.

Darius Crumpton appeals his conviction of two counts of burglary. He argues that the trial court should have granted a mistrial after a witness for the State implicated his character and that the evidence is insufficient to support his convictions. Because these arguments lack merit, we affirm.

Appellant was tried for these burglaries along with his two brothers, Curtis Crumpton and Michael Crumpton, and their first cousin, Robert Bowen. All four were convicted on both counts. We recently reversed the convictions of Michael Crumpton because there was insufficient evidence that he participated in the burglaries.[1] Although we set forth some of the relevant facts in that opinion, we elaborate on them here to address appellant's involvement in the crimes and the different issues he raises on appeal.

Viewed in the light most favorable to the jury's verdict,[2] the

---

record shows that two businesses in Berrien County — Parker's Pickles[3] and Berrien Gin Company — were burglarized in July and August 1996. In the Parker's Pickles burglary, two doors were kicked in, the building was ransacked, and a box of payroll checks was taken. In the Berrien Gin Company burglary, a rock was thrown through the window, and business checks and a typewriter were stolen. Berrien County Sheriff Jerry Brogdon, who investigated the crimes, found prints from different kinds of shoes at Berrien Gin Company and concluded that more than one person was involved in the burglary. He was able to make a cast of one print.

Shortly after the burglaries, a local bank began receiving forged, canceled checks written on Parker's Pickles accounts. Sheriff Brogdon testified that the forged checks totaled approximately $23,000 and were made out to several different individuals. After questioning these individuals, Brogdon focused on Joseph Martin, appellant's brother-in-law, as a suspect in the burglaries.

Police searched Martin's residence and found a typewriter and a pair of tennis shoes that matched the cast from the shoe print at Berrien Gin Company. Martin told police that he, Curtis Crumpton, and appellant had driven past Berrien Gin Company in Curtis' Cadillac and decided to burglarize it. According to Martin, appellant threw a rock through the window and then entered the building. Martin gave the police a written statement describing the burglary. He also told police that he, Curtis Crumpton, and appellant had burglarized Parker's Pickles. Martin led the police to a large bag of stolen Berrien Gin Company checks. According to Sheriff Brogdon, tire prints found at both Parker's Pickles and Berrien Gin Company after the burglaries were consistent with the wheelbase of a Cadillac.

The State charged appellant, Martin, Curtis Crumpton, Michael Crumpton, and Bowen with two counts of burglary. Martin pled guilty, and the remaining defendants were tried together.

Four of the individuals who cashed the forged checks testified at trial. Thomas Sheppard testified that appellant approached him on a street corner and asked him "about making some money cashing checks," and Sheppard agreed. According to Sheppard, appellant returned with several checks which were drawn on Parker's Pickles accounts and made out to Sheppard. Sheppard cashed the checks at local stores. Kevin Washington testified that Martin and Curtis Crumpton picked him up several times and drove him to stores to cash forged Parker's Pickles checks. Kenneth Rountree testified that he cashed a check made out to him on a Parker's Pickles account and

---

[3] Although the parties refer to this business as the Pickle Shed, the owner of the business testified that it is called Parker's Pickles.

gave the money to Curtis Crumpton, who paid him with crack cocaine. Finally, Derrick Davis testified that all three Crumpton brothers took him at various times to different places to cash checks. The checks were made out to Davis and were drawn on Parker's Pickles accounts. Davis described the scheme as follows:

> I go in there and cash the check. . . . Go and cash the checks, then they tell me, hey, man, go and buy, you know, beer, cigarettes, baby Pampers or something like that, it'd be easy to cash the checks. . . . I would purchase about 65, $70 worth. . . . And I'd go in there and do that and come back out and give them the money and I always get, you know, between 50 and $75 for these checks.

According to Davis, whichever Crumpton brother had driven him to the store would keep the remainder of the money.

Martin also testified at the trial. He claimed that he alone committed the burglaries and that the Crumpton brothers were not involved. However, Martin's prior statement to police implicating the Crumptons was admitted into evidence and read to the jury. The jury found appellant guilty of both burglaries.

1. (a) Appellant contends that the trial court should have granted a mistrial after Sheriff Brogdon testified that the Crumptons were the subject of ongoing investigation by different law enforcement agencies. Counsel for co-defendant Michael Crumpton elicited this testimony during cross-examination. After Brogdon admitted that Michael Crumpton was in jail when the burglaries occurred, counsel asked why Brogdon asked the grand jury to indict him. Brogdon responded that the information he presented to the grand jury was based on his year-long investigation of the Crumptons and included information from "other law enforcement agencies that had been in the past for quite some time been involved in an investigation on the Crumptons, and that went way back." Appellant's attorney objected and moved for a mistrial, arguing that Brogdon's testimony improperly placed appellant's character in issue. The court did not grant a mistrial but directed Michael Crumpton's attorney and Brogdon to change the subject.

We review for manifest abuse of discretion a trial court's denial of a motion for a mistrial.[4] We will reverse the trial court's ruling only if "a mistrial is essential to the preservation of the right to a fair trial."[5] As the State points out, Brogdon simply referred generally to the investigation of the Crumptons; he imparted no details of that

---

[4] See *Wilcox v. State*, 229 Ga. App. 192, 193 (2) (493 SE2d 600) (1997).
[5] (Punctuation omitted.) Id.

investigation and did not accuse appellant of uncharged crimes. Even when a witness has directly mentioned a defendant's prior criminal record — a circumstance far more prejudicial than Brogdon's general statement — we have found no cause for a mistrial.[6] Accordingly, the trial court's ruling was not an abuse of discretion.

(b) Appellant argues that the prejudice associated with Brogdon's testimony was compounded by the State's introduction of evidence of other crimes. Although he provides no citation to the record, appellant is apparently referring to the testimony of Sheppard, Washington, Rountree, and Davis regarding the forged checks. Appellant does not denominate the admission of this evidence as a separate enumeration of error, but merely an aggravation of his first enumeration.

Before trial, the trial court held a hearing on the admissibility of forgery evidence. The State maintained that the defendants had committed the two burglaries for which they were on trial as part of a forgery conspiracy that began in 1994. Accordingly, the State argued that evidence of the forgeries was admissible because the forgeries were logically related to the burglaries. Appellant's attorney objected to the admission of evidence of any forgeries committed "prior to 1996, July and August, when the dates of these two burglaries are alleged." Although counsel for co-defendant Michael Crumpton challenged the admissibility of *any* evidence of forgery, counsel for appellant objected only to evidence of forgeries unrelated to the burglaries with which appellant was charged. The judge agreed to "let the transactions in," but did not specify whether his ruling included *all* forgeries or only those related to the charged burglaries. Nevertheless, our review of the record shows that the testimony of Sheppard, Washington, Rountree, and Davis focused on checks written on the Parker's Pickles accounts, not on earlier forgeries.[7] Likewise, the canceled checks admitted as exhibits at the trial were all drawn on Parker's Pickles accounts and dated after the burglaries. To the extent that appellant now attempts to challenge the admissibility of such testimony, he has waived this objection by not making it at trial.[8] Even if appellant had not waived the objection, however, such evidence is clearly admissible because it tends to show appellant's involvement in the crime — i.e., he had possession of the stolen prop-

---

[6] See, e.g., *Smith v. State*, 234 Ga. App. 586, 588-589 (1) (a) (i) (506 SE2d 406) (1998); *Hillman v. State*, 184 Ga. App. 712, 714 (3) (362 SE2d 417) (1987).

[7] Counsel for Michael Crumpton asked Rountree how many forgeries he had participated in, and Rountree responded that he tried to cash a check in 1994 but failed. But Rountree did not implicate any of the defendants in that forgery attempt. Even if he had, this one reference to a previous incident did not require a mistrial. See *Smith,* supra; *Hillman,* supra.

[8] See *Foster v. State*, 226 Ga. App. 334, 335 (1) (486 SE2d 635) (1997).

erty — as well as his motive for the burglaries.

2. Appellant contends that the only evidence that he committed the burglaries is the testimony of co-defendant Martin, which is legally insufficient to support his convictions. We disagree.

Although OCGA § 24-4-8 provides that the uncorroborated testimony of an accomplice is insufficient to support a felony conviction, slight evidence of corroboration will satisfy the statute, and the evidence may be circumstantial.[9] Moreover, "evidence of the defendant's conduct before and after the crime may give rise to an inference that he participated in the crime."[10] Martin's statements to police were corroborated by Sheriff Brogdon's testimony that there were multiple sets of footprints at the scene of the burglaries, by the presence of tire tracks consistent with a Cadillac wheelbase at both businesses, by the discovery of the tennis shoes and typewriter at Martin's residence, and by Martin's leading police to Berrien Gin Company payroll checks. In addition, the State presented evidence that appellant and his co-defendants presented forged Parker's Pickles checks to several individuals, drove those individuals to stores to cash the checks, and then pocketed the proceeds.[11] Taken as a whole, this evidence was sufficient for the jury to convict appellant of the burglaries.[12]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MAY 18, 2000.

*Melinda I. Ryals*, for appellant.

*Robert B. Ellis, Jr., District Attorney, Timothy L. Eidson, Assistant District Attorney*, for appellee.

---

[9] *Parkerson v. State*, 265 Ga. 438, 439 (2) (457 SE2d 667) (1995).
[10] Id.
[11] Sheppard and Davis specifically testified that they dealt with appellant in cashing the forged checks.
[12] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).