A00A0342. SALTERS v. THE STATE.
(535 SE2d 278)

MILLER, Judge.

A jury found Perry Wayne Salters guilty of interference with government property and attempted escape with a dangerous weapon.

---

On appeal, he enumerates as error the denial of a directed verdict as to the attempt charge and the denial of his motion for mistrial based upon the State's comments during closing argument. We affirm.

1. Count 2 of the indictment alleged that Salters and his co-defendant, being lawfully in pretrial confinement, did take a substantial overt step toward escaping while armed with a dangerous weapon, namely a sharpened piece of metal, by gouging a hole in the detention center wall. In support of his motion for directed verdict, Salters argues there was no evidence that he used the tools described by the State to be dangerous weapons. The standard of review is the same for the denial of a motion for directed verdict of acquittal as it is for the sufficiency of the evidence.[1] That is, we view the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt.[2]

The evidence reveals that around 1:30 a.m., guards at the Cherokee County Adult Detention Center heard a scratching noise coming from one of the jail's pods. Inside, they found a deep hole in the wall, partially obscured by a chair, between the bunks occupied by Salters and a co-defendant. They also found two small, sharp metal objects shaped like an arrowhead, one hidden in a cereal box in the corner of Salters's bunk and another, hidden with a bolt used as a handle, behind a cooler.

Guards removed the twelve inmates from the pod and questioned each one about the incident. Inmate Christopher Howard testified that Salters and his co-defendant took turns scraping the hole in the wall and that the two and one other inmate had talked about escaping two days prior to the discovery by guards. He further testified that he saw Salters drop the bolt behind the cooler as officers entered the pod to investigate. A second inmate testified, however, that it was Howard who scraped out the hole, causing dust to fall on the inmate's bunk, and that Howard tried to conceal his actions by hanging a blanket over the bunk. A third inmate testified that Howard was in the back near the wall prior to the discovery, but that he did not know who chipped the hole in the wall.

Although there is conflicting testimony, the credibility of witnesses and the weight given their testimony are questions for the trier of fact, and it is not for this court to determine how the jury resolved conflicts in the evidence.[3] Here, Howard's testimony implicating Salters was corroborated by the discovery of the sharp arrowhead concealed in the cereal box in the corner of Salters's bunk.

---

[1] *Stewart v. State*, 240 Ga. App. 375, 376 (523 SE2d 592) (1999).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Davis v. State*, 223 Ga. App. 346, 347 (1) (477 SE2d 639) (1996).

Thus, there was sufficient testimony for a rational trier of fact to find that Salters took a substantial step toward the commission of the crime of escape[4] and that the criminal attempt to escape was aggravated because Salters was armed with a dangerous weapon.[5] The trial court properly denied the motion for a directed verdict.

2. Salters contends that the State made improper comments during closing argument about Salters's failure to testify. The prosecutor stated:

> In opening statements you were made some promises by the Defense. You were told that this was a jail that couldn't be broken out of anyway. That you'd hear evidence that there were bars and there were this and that and there was the other, and that you couldn't actually dig your way out of this jail. Think about the testimony you heard. One deputy was asked how he would make it if he did make it. You have no testimony about the construction of our jail. You have no evidence that it couldn't be broken out of. You're also told that you'd hear testimony that Perry Salters had experience in construction and that he knew it that he wouldn't be so foolish as to try to break out because not only was he familiar with construction, but he was familiar with the construction in our jail and that he would never be so stupid as to try to break out. There is no evidence of that, Ladies and Gentlemen. You never heard it. You never heard that.

Salters objected and moved for mistrial, but the prosecutor explained that she was not commenting on the fact that Salters failed to testify but was only emphasizing that "[the jury and parties] heard no testimony."

Under the test set forth in *United States v. Rochan*,[6]

> reversal for improper prosecutorial conduct requires a finding that (1) the prosecutor's manifest intention was to comment upon the accused's failure to testify or (2) the comment was of such character that the jury would naturally and nec-

---

[4] See OCGA § 16-4-1. Under OCGA § 16-10-52 (a) (2), a person commits the offense of escape when he, "[b]eing in lawful custody or lawful confinement prior to conviction, intentionally escapes from such custody or confinement. . . ." OCGA § 16-10-52 (b) makes the offense a felony if committed while armed with a dangerous weapon.

[5] Although Salters does not directly argue that the metal objects are not dangerous weapons, we point out that the jury makes the determination as to whether the object is in fact dangerous. See *Baird v. State*, 201 Ga. App. 378 (411 SE2d 332) (1991).

[6] 563 F2d 1246 (5th Cir. 1977).

essarily take it to be a comment on the failure of the accused to testify.[7]

Although the better practice clearly is not to refer to the defendant by name, standing alone this is not controlling.[8] In context, the statements by prosecuting counsel were not an impermissible reference to Salters's failure to testify but a response to argument made in the defense's opening statement claiming the proof of certain evidence.[9] In closing, the prosecution argued that the defense failed to present the evidence promised. The prosecution never mentioned that Salters personally did not testify, and the evidence the defense promised did not necessarily have to come from Salters personally. Thus, in our view, the statements did not reflect a "manifest intention" to comment on Salters's failure to testify, nor do we find that the comments were such that a jury "would naturally and necessarily" find them to be so.[10]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

DECIDED MAY 26, 2000.

*Wallace W. Rogers, Jr.,* for appellant.
*Garry T. Moss, District Attorney, Cecelia Harris, Philip F. Monte III, Assistant District Attorneys,* for appellee.

---

[7] (Citations and punctuation omitted.) *Lobdell v. State*, 256 Ga. 769, 774-775 (10) (353 SE2d 799) (1987).

[8] See *Martin v. State*, 193 Ga. App. 581, 586 (4) (388 SE2d 420) (1989).

[9] Cf. *Crowe v. State*, 265 Ga. 582, 593 (18) (e) (458 SE2d 799) (1995); *Lobdell*, supra, 256 Ga. at 774-775 (10).

[10] See *Martin v. State*, supra, 193 Ga. App. at 586 (4); *Ward v. State*, 262 Ga. 293, 296 (6) (a) (417 SE2d 130) (1992) (closing argument "make them explain" was neither burden-shifting nor an impermissible reference to the defendant's failure to testify); see also *McGee v. State*, 260 Ga. 178, 179 (4) (b) (391 SE2d 400) (1990).