## A00A2243. McINTOSH v. THE STATE.
### (545 SE2d 61)

BLACKBURN, Chief Judge.

Following the grant of his motion for new trial after his original conviction, Joseph A. McIntosh now appeals his conviction for rape on retrial, contending that the evidence was insufficient to support his conviction. McIntosh also contends that the trial court erred by (1) limiting his cross-examination of the victim, (2) denying his motion for a mistrial after the State injected his character into evidence, (3) denying his motion for a mistrial after the State repeatedly elicited the term rape notwithstanding the court's having granted McIntosh's motion to preclude the use of the term, and (4) charging the jury on the issue of consent and force. For the reasons set forth below, we affirm.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [McIntosh] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Barber v. State.*[1] See *Jackson v. Virginia.*[2]

So viewed, the evidence shows that on December 3, 1996, the victim arrived at Yong's Country Club with Cindy Lariscy. While the victim was seated at the bar, McIntosh approached her and made small talk with her. After repeated requests, she agreed to dance with McIntosh, and the two danced for five to ten minutes. When the victim returned to her seat, Lariscy informed the victim that her fiancé,

---

[1] *Barber v. State,* 235 Ga. App. 170 (509 SE2d 93) (1998).
[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Ken Henline, had been there, had seen her and McIntosh dancing, and left. Upon hearing this, the victim immediately left the bar, carrying a red cigarette case, and went to her car.

As the victim was putting her keys in the car, McIntosh grabbed her from behind and said, "where in the hell do you think you're going." As McIntosh started pulling the victim toward the woods behind Yong's, she tried to dig her heels into the ground to stop him. Although the victim did not feel threatened at first because she did not think that McIntosh was going to harm her, she became concerned when McIntosh began pulling her down at the bank of a hill and she lost her shoes. McIntosh then penetrated the victim's vagina with his penis.

After McIntosh left, the victim went back into the bar and told Lariscy and another person that McIntosh had raped her. She was hysterical and had scratches on her face. The victim then went to Henline's home and told him that she had been raped. Henline called the police. The victim then accompanied the police to Yong's, where the police recovered a pair of women's shoes, a red cigarette case, a man's shoe, a man's wallet, and a man's shirt. The wallet contained McIntosh's driver's license. After leaving the crime scene, the police took the victim to the hospital for a rape examination. McIntosh's semen was found on her underwear.

That same evening, McIntosh was seen at another bar without a shirt and wearing only one shoe. He appeared to be intoxicated. The bar owner did not serve McIntosh because of his appearance, and McIntosh went home. The police went to McIntosh's home and noticed he had scratches on his face. McIntosh told police that he had not been with a female.

1. McIntosh argues the evidence was insufficient to support his rape conviction because he and the victim had consensual sexual intercourse and there is no "credible, reliable and competent evidence" suggesting otherwise. "[T]he credibility of witnesses and the weight given their testimony are questions for the trier of fact." *Salters v. State*.[3] Although McIntosh does not deem the victim's testimony that the intercourse was not consensual credible, the jury did. Moreover, from the scratches, lost clothing, and the victim's testimony, the jury could reasonably infer that the intercourse was nonconsensual.

2. McIntosh argues that the trial court erred by limiting his cross-examination of the victim. "An abuse of discretion standard applies when reviewing a trial court's ruling on general evidentiary matters." *Agony v. State*.[4]

[3] *Salters v. State*, 244 Ga. App. 219, 220 (1) (535 SE2d 278) (2000).
[4] *Agony v. State*, 226 Ga. App. 330, 332 (3) (486 SE2d 625) (1997).

The victim testified on direct examination that, during the time that the rape occurred, she had been taking Xanax for her nerves, a sleeping pill, and Zoloft, an antidepressant. She took these medications at night and had not taken them on the day of the rape. On cross-examination, the victim testified that she took these medications because someone very close to her had died on April 1, 1996. When McIntosh asked who had died, the State began to object, and the trial court responded, "[t]hat doesn't really seem relevant to me. Sustained."

The court later allowed McIntosh to examine the victim outside the presence of the jury in order to perfect the record. The victim testified that her husband had died in April 1996. They had been separated but were on the verge of reconciliation at the time. She did not see a psychiatrist or begin taking medication until July 1996. Also in July 1996, the victim married Donald Edenfield, but filed for divorce sometime before October 1996 because Edenfield went to prison two weeks after they were married. The victim began dating Henline in October 1996.

McIntosh contends that he should have been permitted to present this proffered testimony to the jury in order to impeach the victim on her statement that she was taking medication because someone close to her had died as she did not begin taking the medication until July, which was when she married Edenfield. McIntosh asserts that the Rape Shield Statute does not protect the victim in this instance because her explanation was "specious" and, therefore, subject to challenge. We disagree.

" 'A witness may not be impeached by contradictory statements previously made by [her] as to immaterial matters not relevant to [her] testimony and to the case.' " *Burritt v. Media Marketing Svcs.*[5] The trial court did not abuse its discretion by determining that an inquiry into the facts regarding why the victim began taking certain medications was not relevant to the case. Indeed, it is apparent that the true purpose of eliciting such testimony was to show the jury that the victim had been involved with three men within a seven-month period. Such an inquiry is prohibited under the Rape Shield Statute, which provides that

> [i]n any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code sec-

---

[5] *Burritt v. Media Marketing Svcs.*, 242 Ga. App. 92, 93 (527 SE2d 890) (2000).

tion, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.

OCGA § 24-2-3 (a).

McIntosh also argues that the trial court erred by denying his motion to have the victim demonstrate the way she danced with him. After McIntosh requested that the victim demonstrate how the two danced, the trial court stated, "[n]o, I'll allow you to ask her questions. But I won't insist on a demonstration." McIntosh waived this issue on appeal by failing to object to the trial court's ruling. See *Robbins v. State.*[6]

3. McIntosh argues that the trial court erred by not declaring a mistrial because the State, on three occasions, elicited testimony that there was a prior trial in the case. "We review for manifest abuse of discretion a trial court's denial of a motion for a mistrial. We will reverse the trial court's ruling only if a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Crumpton v. State.*[7]

After the first trial of this case, a jury found McIntosh guilty of rape. The trial court later granted McIntosh's motion for a new trial based on a jury instruction on lesser included offenses.

During the second trial, Karen Blalock, the owner of the bar that McIntosh went to after leaving Yong's, testified that McIntosh "had been drinking, but I wouldn't say [he was] drunk." The State then asked, "[d]id you say in the prior trial that his speech was slurred when you talked to him?" McIntosh objected. The court cautioned the State to be more careful. Later, when questioning Blalock on another matter, the State asked, "[d]o you remember me asking back when we tried this the last time?" McIntosh objected, and the court again cautioned the State. Later in the trial, after the State asked McIntosh's sister whether she remembered testifying on another occasion, McIntosh's sister responded, "[w]as that the previous trial?"

Diane Gay, who gave similar transaction testimony about another sexual assault by McIntosh, stated that McIntosh had entered into a plea bargain in that case. The court gave a lengthy curative instruction to the jury, informing them that Gay had no basis to make such a statement. The court also stated that a jury decided that case and, therefore, McIntosh could not have entered into a plea bargain. Rather, McIntosh "maintained his innocence

---

[6] *Robbins v. State*, 243 Ga. App. 21, 24-25 (5) (532 SE2d 127) (2000).
[7] *Crumpton v. State*, 244 Ga. App. 57, 59 (534 SE2d 809) (2000).

throughout that trial and . . . a jury was unable to decide."

We find no manifest abuse of discretion in the trial court's denial of McIntosh's motions for a mistrial based on the foregoing references to his prior trials because, even when considered cumulatively, such references did not render the trial unfair. See *Crumpton v. State*, supra.

4. McIntosh argues that the trial court erred by denying his motion for a mistrial based on the State's reference to and elicitation of the term "rape" during the trial given that the defense was consent. McIntosh did not preserve this issue for appellate review because he did not request a mistrial or a curative instruction.

McIntosh filed a pre-trial motion in limine requesting that the State refrain from using the term rape because the defense was consent, which the trial court granted. See *Arnold v. State*[8] ("[r]eference to an incident as rape states a conclusion usually to be determined by the jury"). At trial, the State asked the victim whether she was wearing her bra and shirt while she was "being raped." Defense counsel objected and stated, "I'd like to renew the motion." The State later asked the victim, "[d]id you identify the person that has been charged with this offense that I can't mention?" Defense counsel objected and stated, "I'd like to make a motion, Your Honor." The State later asked another witness whether the victim pointed out "the area in which she had been raped." Defense counsel objected and stated, "I've got a motion. . . . We filed that motion four or five days ago."

McIntosh had the burden of requesting the mistrial at the time he objected to the State's use of the word "rape." Because McIntosh failed to do so, this enumeration of error is deemed waived. See *Dye v. State*.[9]

In *Marks v. State*,[10] the Court found no error resulting from references to the term "rape" in light of the trial court's instruction to the jury "that the question of whether or not any rape occurred would be a question for their determination at the appropriate time." McIntosh also waived the issue by failing to request such a curative instruction. See *Espinoza v. State*.[11]

5. McIntosh argues that the trial court erred by charging the jury as follows:

> When the victim is physically or mentally unable to give consent to the act, as for example when she is intoxicated, drugged, or mentally incompetent such that she is unable

[8] *Arnold v. State*, 166 Ga. App. 313, 317 (304 SE2d 118) (1983).
[9] *Dye v. State*, 177 Ga. App. 824, 825 (341 SE2d 314) (1986).
[10] *Marks v. State*, 237 Ga. 277 (2) (227 SE2d 334) (1976).
[11] *Espinoza v. State*, 244 Ga. App. 96 (1) (534 SE2d 824) (2000).

mentally to give consent to the act, the requirement of force is found in constructive force.

McIntosh contends that giving this instruction was error because there was no evidence that the victim was incompetent or that her intoxication rose to a level of complete loss of will. We disagree.

McIntosh presented evidence that the victim consumed three or four beers before arriving at Yong's and three or four mixed drinks while at Yong's. Thus, the jury could conclude that the victim was intoxicated. In addition, because the State presented evidence of actual force, any error resulting from this charge was harmless.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED JANUARY 23, 2001.

*Quillian, Lonson & Edwards, Michael L. Edwards,* for appellant.
*Spencer Lawton, Jr., District Attorney, Kimberly Rowden, Assistant District Attorney,* for appellee.