## S06A2053. COCKRELL v. THE STATE.
### (640 SE2d 262)

THOMPSON, Justice.

Following a jury trial, appellant Kenneth Cockrell was convicted of malice murder, aggravated assault, and possession of a knife during the commission of a crime.[1] On appeal, Cockrell asserts that the trial court erred in denying his motion to suppress, in admitting evidence of his involvement in a prior criminal transaction, and in denying his motion for mistrial. Finding no reversible error, we affirm.

Viewed in a light most favorable to the verdict, the evidence established that the victim, Deshawn Harris, lived with his sister, Gennell McGarrah, and McGarrah's boyfriend, appellant Kenneth Cockrell. Harris permitted a friend, Laron Davis, to spend the night at their home without first consulting with McGarrah. McGarrah asked Cockrell to speak to Harris about the unauthorized house guest. Cockrell called Harris into the kitchen to discuss the matter and a fight ensued between the two men. Harris retreated to a back bedroom; Cockrell followed him, and asked, "are you ready for round

---

[1] The crimes were committed on February 11, 2004. An indictment was returned on April 21, 2004, charging Cockrell with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault, and possession of a knife during the commission of a crime. Trial commenced on December 13, 2004, and on December 16, 2004, a jury found Cockrell guilty of malice murder, aggravated assault, and possession of a knife during the commission of a felony. Cockrell was sentenced on January 13, 2005 to life imprisonment for murder, plus twenty consecutive years for aggravated assault, and five consecutive years for the weapon offense. A motion for new trial was filed on January 25, 2005 and denied on May 16, 2006. A timely notice of appeal was filed. The case was docketed in this Court on August 9, 2006, and submitted for a decision on briefs on October 2, 2006.

two?" The two men continued their fist fight until they were separated by McGarrah's father. Moments later, Cockrell returned to the back bedroom armed with a knife, and he fatally stabbed Harris.

Cockrell waived *Miranda* rights and in a custodial statement, he claimed that he had to procure the knife as an "equalizer" since the victim was younger and stronger than he, and that the stabbing was accidental because the victim "ran into the knife." McGarrah, Davis, and McGarrah's father all testified as eyewitnesses to the events, implicating Cockrell.

The medical examiner noted several bruises and superficial knife wounds to the victim, and a single stab wound to the left chest which pierced the heart and resulted in death.

1. Construed in support of the verdict, the evidence was sufficient for a rational trier of fact to have found Cockrell guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Cockrell contends that the trial court erred by admitting at trial evidence seized pursuant to an invalid search warrant. The record demonstrates that upon learning that a homicide had occurred at the Harris residence, police obtained a warrant to search the property. Numerous objects were seized pursuant to that warrant, including a blood stained lock-blade knife and a tee-shirt stained with the victim's blood taken from a drawer in a bedroom occupied by Cockrell. In a pretrial motion to suppress the evidence, Cockrell claimed that the search warrant lacked sufficient specificity and thus was constitutionally inadequate.[2] Following an evidentiary hearing, the trial court denied the motion to suppress and the evidence was admitted against Cockrell at trial.

On motion for new trial, Cockrell reasserted his claim that the seized evidence should not have been admitted, and the trial court agreed, acknowledging that it erred by holding that the warrant was constitutionally sufficient. In addition, the court determined that it should have excluded the testimony of two GBI agents who testified as to the DNA analysis of blood on the knife. Nonetheless, the trial court determined that the admission of the evidence at trial was harmless in light of Cockrell's inculpatory statement, the various eyewitnesses implicating him, and his proffered theories of self-defense and accident.

---

[2] The information provided to the issuing magistrate was as follows: "there is now being concealed [at McGarrah's residence] certain property, namely evidence which is evidence which will be used in the prosecution of a homicide case." The affidavit in support thereof merely added that a homicide occurred at that location, that the victim had been "stabbed with an unknown object," it is unknown what evidence will be collected, and "any evidence collected will be used to prosecute this case."

Thus, contrary to Cockrell's argument on appeal, on motion for new trial the trial court agreed that the seized evidence should not have been admitted. The court denied Cockrell's motion for new trial on this ground, however, because it found that the admission of such evidence was harmless error. See *Yancey v. State*, 275 Ga. 550, 557 (3) (570 SE2d 269) (2002) ("Whether a constitutional violation constitutes harmless error depends on whether the state can prove beyond a reasonable doubt that the error did not contribute to the verdict."). Although Cockrell does not challenge the court's harmless error ruling on appeal, based on the record before us, we agree that any error resulting from the improperly admitted evidence was harmless beyond a reasonable doubt. See *Mullins v. State*, 258 Ga. 734 (2) (374 SE2d 530) (1988) and cases cited therein.

3. Alternatively, Cockrell argues that testimony concerning the DNA evidence should have been excluded because it was not timely provided to the defense.

Three days into the State's case-in-chief, the prosecutor advised the court that the State had just received the results of DNA testing on the bloody knife and tee-shirt, and now sought to introduce the evidence at trial. Cockrell objected to the admissibility of the lab report and the testimony of the GBI agents who would introduce it on the ground that the information was not timely produced to the defense. In a proffer outside the presence of the jury, the State's investigator testified that she made the request for DNA analysis months earlier and that she had followed up with numerous phone calls to the crime lab urging the need for the results because trial was imminent, but that due to a backlog of almost a year, the results were not provided until trial. After the court permitted the defense to interview the witnesses, Cockrell further objected on the ground that admission of the eleventh hour evidence constituted trial by ambush and denied him due process of law. The trial court overruled the objection, finding that the State had exercised due diligence in attempting to obtain the information, that the defense was afforded an opportunity to interview the witnesses, and that other direct and circumstantial evidence created a strong probability that the identity and source of the blood evidence would be clear. Thus, the court concluded that Cockrell was not unduly prejudiced by admission of the evidence. The GBI forensic biologist who analyzed the evidence testified that DNA testing of the blood on the knife was inconclusive, but that blood on Cockrell's tee-shirt was that of the victim.

Cockrell opted into discovery under OCGA § 17-16-2 (a). OCGA § 17-16-8 (a) requires that the prosecuting attorney provide the defense with the State's list of witnesses "not later than ten days before trial . . . unless for good cause the judge allows an exception to this requirement, in which event the [defense] counsel shall be

afforded an opportunity to interview such witnesses prior to the witnesses being called to testify." OCGA § 17-16-6 sets forth the remedies available to a defendant upon the State's failure to comply with discovery:

> [T]he court may order the [S]tate to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [S]tate from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

Thus, the severe sanction of exclusion of evidence applies only where there has been a showing of bad faith by the State *and* prejudice to the defense. *Rosas v. State*, 276 Ga. App. 513 (2) (624 SE2d 142) (2005) (trial court properly refused to exclude crime lab results which were not furnished to the defense where bad faith by the State was not shown). See also *Massey v. State*, 272 Ga. 50 (4) (525 SE2d 694) (2000). Here, defense counsel acknowledged at the hearing on the motion for new trial that there was no evidence of prosecutorial misconduct and it is undisputed that Cockrell was afforded an opportunity to interview the witnesses. See *Berry v. State*, 268 Ga. 437 (3) (490 SE2d 389) (1997) (interview is remedy for failure to comply with disclosure of witness). It follows that the court did not abuse its discretion in refusing to exclude the DNA results under OCGA §§ 17-16-8 (a) and 17-16-6. *Rosas*, supra.

4. Cockrell submits that the trial court erred in admitting evidence of his January 1997 conviction for aggravated assault. At a hearing held in accordance with *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), Nathaniel Harpe testified that in 1996 Cockrell approached him from behind as he was unlocking his car in the parking lot of a nightclub. Without provocation, Cockrell hit Harpe in the back, fought with him, and then produced a knife and stabbed Harpe five times. As a result, Cockrell was tried and convicted of aggravated assault. The trial court ruled that evidence of the prior conviction would be admissible for the purpose of showing motive or intent, and the evidence was put before the jury with a proper limiting instruction to that effect.

Among the current charges against Cockrell was felony murder in the commission of an aggravated assault, and his defense was justification. As in *Farley v. State*, 265 Ga. 622, 623 (2) (458 SE2d 643) (1995),

> evidence of appellant's commission of the prior aggravated [assault] would be admissible if it was so sufficiently similar

to the instant aggravated [assault] as to be relevant to his "bent of mind" or "course of conduct" in initiating or continuing such encounters. Under those circumstances, the evidence of his prior commission of a sufficiently similar aggravated [assault] would tend to rebut his claim of justification by showing a "bent of mind" or "course of conduct" in initiating or continuing such encounters, as contrasted to acting in self-defense.

We hold that evidence of the prior aggravated assault was sufficiently similar to be admissible to show Cockrell's bent of mind in initiating the stabbing of Harris, and to rebut self-defense.

5. Cockrell submits that the trial court erred in denying his motion for mistrial made during the prosecutor's closing argument based on an improper reference to defendant's failure to testify. Defense counsel stated during closing argument that it had "just occurred" to him that Gennell McGarrah might have committed the murder. He continued: "If it had occurred to me before last night that this is what may have happened, I would certainly have put [Cockrell] on the stand and asked him about it. But it is too late for that." In response, the prosecutor argued in closing,

> You know who killed [Harris] because the defendant told you he did it. It is ludicrous. It is unbelievable that [defense counsel], first of all, would say that it just came to him last night. Last night? That it is Gennell? And oh, too bad it is over because they could have put the defendant on the stand and subjected him to cross-examination just like every other witness.

Cockrell objected to any reference to his failure to testify. The trial court ruled that the prosecutor's limited statement was an appropriate response to the argument of defense counsel. In addition, the court sua sponte instructed the jury that the defendant has no burden to testify and that no negative inference should be drawn from his failure to so do. Cockrell followed with a motion for mistrial, which the court denied.

> [R]eversal for improper prosecutorial conduct requires a finding that (1) the prosecutor's manifest intention was to comment upon the accused's failure to testify or (2) the comment was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. [Cit.]

(Punctuation omitted.) *Lobdell v. State*, 256 Ga. 769, 774 (10) (353 SE2d 799) (1987). Here the prosecutor's comment was in direct response to a defense argument. See *Crowe v. State*, 265 Ga. 582, 593 (18) (e) (458 SE2d 799) (1995); *Salters v. State*, 244 Ga. App. 219 (2) (535 SE2d 278) (2000). When considered in its proper context, the prosecutor's statements neither reflected a "manifest intention" to comment on the failure to testify, nor were the comments such that a jury "would naturally and necessarily" find them to be so. *Lobdell*, supra at 774. In addition, the court gave the jury a prompt curative instruction setting forth the correct principles of law. Accordingly, we find no abuse of discretion in the refusal to grant a mistrial.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 22, 2007.

*Agis R. Bray III*, for appellant.

*Kenneth B. Hodges III, District Attorney, Kathryn O. Fallin, Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina A. Watkins, Assistant Attorney General*, for appellee.