## A08A2218. SOLANO-RODRIGUEZ v. THE STATE.

(673 SE2d 351)

MILLER, Chief Judge.

A Gwinnett County jury convicted Dennis Omar Solano-Rodriguez on one count of trafficking in cocaine (OCGA § 16-13-31 (a)). Solano-Rodriguez appeals from the trial court's order denying his motion for a new trial, arguing that the trial court erred by (1) failing to grant his motion to suppress physical evidence, (2) failing to grant his motion to suppress his custodial statements, and (3) failing to instruct the jury regarding the voluntariness of those statements. Discerning no error, we affirm.

> A trial judge who hears a motion to suppress sits as the trier of facts. The judge's decision regarding questions of fact and credibility must be accepted unless clearly erroneous and should not be disturbed by a reviewing court if any evidence supports it. A reviewing court must construe the evidence most favorably to upholding the trial court's findings and judgment.

(Citations omitted.) *Akins v. State*, 266 Ga. App. 214 (596 SE2d 719) (2004).

So viewed, the record shows that on July 22, 2004, Solano-Rodriguez was on a bus traveling south en route from New York to Florida. That same day, Corporal Tony Pilcher of the Motor Carrier Compliance Division of the Georgia Department of Motor Vehicle Safety[1] (the "Division"), was working on a multi-agency detail conducting a commercial vehicle check on Interstate 85 in and around Gwinnett County. The Division is responsible for enforcing federal motor carrier regulations, which have been adopted under Georgia law,[2] and pursuant to its enforcement authority, the Division

---

[1] Subsequently, the Division was transferred to the Georgia Department of Public Safety.

[2] See OCGA § 46-7-26 (Commissioner of Public Safety "shall have the authority to promulgate rules and regulations for the safe operation of motor vehicles and drivers[, and] . . . [r]egulations governing the safe operation of motor vehicles and drivers . . . may be adopted by administrative order referencing compatible federal regulations or standards. . . ."); OCGA § 46-7-27 ("The Public Service Commission, Department of Public Safety, and Department of Revenue are authorized to adopt such rules and orders as they may deem necessary in the enforcement of this chapter [governing motor common or contract carriers]"); OCGA § 35-2-101 (a) (3) (duties of Division include "[e]nforcement of safety standards for motor vehicles and motor vehicle components"); Ga. Comp. R. & Regs. r. 515-16-4-.01 (Public Service Commission regulation adopting federal motor carrier safety regulations in Title 49 of the Code of Federal Regulations, Parts 350, 382, 383, and 390 through 397 but acknowledging that the "Georgia Department of Public Safety ('GDPS') has primary authority for promulgating and enforcing motor carrier safety rules under OCGA § 46-7-26; and the Commission will defer to and cooperate with the GDPS in enforcing such Rules. . . .").

may stop commercial vehicles for safety inspections without probable cause.[3]

During the evening, Pilcher pulled over the bus in which Solano-Rodriguez was traveling to conduct a safety inspection. Pilcher escorted the vehicle to a park-n-ride location on Indian Trail Road, where the inspection could be conducted safely. Georgia State Trooper Dallas VanScoten and Captain Javier Garcia of the Braselton Police Department met Pilcher at the park-n-ride to assist with the inspection.

Pilcher boarded the bus, spoke with the driver and co-driver, and asked for their documentation. Pilcher noticed that most of the passengers appeared to speak Spanish, so he requested that Garcia come on board to talk to the passengers and conduct a consensual encounter. Garcia was born in Cuba and speaks fluent Spanish.

VanScoten initially boarded the bus with Garcia, but when VanScoten realized that a majority of the passengers were Spanish speakers, he stepped off the bus. When he first entered the bus, Garcia stood in the area where the bus driver sits in order to leave the aisle open. Garcia was dressed in plain clothes, wore a badge on his waist, and carried a concealed gun. He addressed the passengers in Spanish and English and advised them that he was going to talk to them about homeland security issues and transportation of illegal drugs and money and would be asking to see their identification and attempting to match passengers with their luggage. He also explained that the passengers did not have to speak with him and that they had the right to leave the bus or to decline to show him their identification or to let him look at their bags. The lights in the bus were on during this time, and Garcia spoke loud enough for all the passengers to hear. The passengers all appeared to be sitting up, and Garcia did not notice anyone sleeping.[4]

---

[3] While Solano-Rodriguez does not contest the Division's authority to stop commercial vehicles for safety inspections, we note that such inspections are authorized under Georgia law. See OCGA § 35-2-101 (c) (3); Ga. Comp. R. & Regs. r. 570-31-.01; Ga. Dept. of Public Safety Transportation Rulebook §§ 1-396.9 (a) ("Every Law Enforcement Officer of the Department or other persons designated by the Department are authorized to stop, enter upon, and perform inspections of motor carrier's vehicles in operation. . . ."), 5-2 (Public Safety Commissioner or designated staff authorized to conduct Safety Operations Reviews of motor carriers under its jurisdiction); see also Ga. Comp. R. & Regs. r. 515-16-4-.03 (1) (Public Service Commission or designated staff also authorized to conduct Safety Operations Reviews).

[4] Solano-Rodriguez testified during the *Jackson-Denno* hearing and at trial that he was asleep when the bus was stopped and that he never heard Garcia advise passengers that they could refuse to cooperate with his requests and were free to leave. We are required to construe the evidence most favorably to upholding the trial court's decisions to deny Solano-Rodriguez's motions to suppress. *Akins*, supra. The trial court would have been entitled to credit Garcia's testimony over Solano-Rodriguez's.

Garcia walked to the back of the bus to begin his inspection so that he would not block the aisle if anyone wanted to get off the bus. Garcia opened one of the overhead compartments, pulled out a bag, and asked who it belonged to. Initially, nobody responded. After Garcia asked again, someone directed him to Solano-Rodriguez. According to Garcia, he approached Solano-Rodriguez and asked him if the bag belonged to him, and Solano-Rodriguez said yes. Garcia asked Solano-Rodriguez if he could search the bag, and Solano-Rodriguez again said yes.[5] Solano-Rodriguez appeared to be alert and oriented, and he and Garcia had no difficulty communicating. Garcia spoke to Solano-Rodriguez in both English and Spanish.

When Garcia unzipped the bag, he discovered a large box of laundry detergent containing two bricks of suspected cocaine, weighing approximately one kilogram each. Garcia summoned VanScoten and showed him the suspected cocaine, and VanScoten escorted Solano-Rodriguez off the bus and placed him under arrest. Garcia finished making his way through the bus and talking to the other passengers, which took about ten minutes.

While Garcia conducted his encounter, Pilcher was busy speaking with the driver and co-driver and carrying out a Level II safety inspection, which entailed inspection of the driver and his documentation and the overall operational safety of the vehicle. The safety inspection lasted from approximately 11:46 p.m. to 1:05 a.m. At the conclusion of the inspection, Pilcher issued an inspection report and cited the driver for not possessing his record of duty status over the previous seven days.

Chemical testing on one of the bricks found in Solano-Rodriguez's bag confirmed that it contained approximately 17.9 percent cocaine. Solano-Rodriguez was indicted on one count of trafficking in cocaine and one count of possession of less than one ounce of marijuana. Prior to trial, Solano-Rodriguez filed a motion to suppress the evidence recovered from his bag. Following a hearing, the trial court denied the motion, finding that the search resulted from "a voluntary police citizen inquiry that resulted in a consensual search" and that "[e]xpress consent was given by [Solano-Rodriguez]." Solano-Rodriguez also filed a motion challenging the voluntariness of his statements. Just prior to commencement of

---

[5] At the *Jackson-Denno* hearing, Solano-Rodriguez testified that he never told Garcia that the bag was his, that he did not have any luggage on the bus, and that he could not recall if he gave Garcia permission to search the bag. Later, at trial, Solano-Rodriguez testified that shortly after he woke up, a police officer grabbed him by the arm and told him he was arrested, and Solano-Rodriguez further stated that he never had a conversation with any officer inside the bus. Once again, we must resolve this conflict between Solano-Rodriguez's and Garcia's testimony in favor of the trial court's decisions. *Akins*, supra.

trial, the trial court held a *Jackson-Denno*[6] hearing to determine whether Solano-Rodriguez's statements confirming that the bag belonged to him and consenting to a search should be suppressed. At the conclusion of the hearing, the trial court denied Solano-Rodriguez's motion.

The case proceeded to a jury trial on the count for trafficking in cocaine, the State having elected to nolle prosequi the count for possession of less than one ounce of marijuana. Solano-Rodriguez was convicted, and he now appeals from the trial court's order denying his motion for a new trial.

1. Solano-Rodriguez argues that the trial court erred in denying his motion to suppress the cocaine discovered during the search of his bag on the bus, arguing that the cocaine was recovered during an unlawful seizure proscribed under the Fourth Amendment. We disagree.

"Not all encounters between police officers and citizens involve seizures which implicate Fourth Amendment protections." (Citation omitted.) *Quinn v. State*, 268 Ga. 70, 72 (485 SE2d 483) (1997). For example, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." (Citations omitted.) *United States v. Drayton*, 536 U. S. 194, 200 (122 SC 2105, 153 LE2d 242) (2002). "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage — provided they do not induce cooperation by coercive means." (Citation omitted.) Id.

In *Florida v. Bostick*, 501 U. S. 429 (111 SC 2382, 115 LE2d 389) (1991), the U. S. Supreme Court reversed a decision of the Supreme Court of Florida which had established a per se rule that, due to the cramped confines of a bus, police officers could not approach bus passengers at random and ask them questions without violating the Fourth Amendment. The defendant in *Bostick* argued that the Florida court's rule was correct and that an encounter with police on a bus is much more intimidating than an encounter in other public places because "police tower over a seated passenger and there is little room to move around." Id. at 435. The defendant relied on language in cases such as *Michigan v. Chesternut*, 486 U. S. 567, 573 (108 SC 1975, 100 LE2d 565) (1988), which stated that "a seizure occurs when a reasonable person would believe that he or she is not 'free to leave.' " Id.

---

[6] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

The U. S. Supreme Court found the defendant's argument unpersuasive, reasoning:

> When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking. But when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter.

Id. at 435-436. Rather, the proper inquiry is "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Id. at 436. The U. S. Supreme Court further clarified that the inquiry entails considering "all the circumstances surrounding the encounter," and that the same standard applies "to encounters that take place on a city street[,] in an airport lobby," or on a bus. Id. at 439-440; see *Drayton*, supra, 536 U. S. at 203-206 (applying *Bostick* framework and holding that defendants were not "seized" during drug interdiction effort on bus, even though officers never advised passengers that they had right to refuse to cooperate).

Ignoring *Bostick*, Solano-Rodriguez relies heavily on *Brendlin v. California*, 551 U. S. 249 (127 SC 2400, 168 LE2d 132) (2007), in which the U. S. Supreme Court held that a passenger in a *private car* is seized during a traffic stop. In *Brendlin*, the U. S. Supreme Court expressly acknowledged that "the relationship between driver and passenger is not the same in a common carrier as it is in a private vehicle, and the expectations of police officers and passengers differ accordingly." Id. at 2410, n. 6. *Brendlin* did not purport to alter the framework in *Bostick* for determining whether a police officer's encounter with a bus passenger is consensual.

Here, Solano-Rodriguez does not dispute that Garcia conducted his encounter with passengers after the bus was stopped for a bona fide, legally authorized safety inspection. The record shows that when he first boarded the bus, Garcia specifically advised passengers that they could leave the bus at any time and did not have to speak with him or comply with his requests. See *Bostick*, supra, 501 U. S. at 437 (fact that officers advised defendant that he could refuse to consent to search was among factors creating doubt that a seizure occurred); *United States v. Watson*, 80 Fed. Appx. 765, 767 (3rd Cir. 2003) (district court did not err in finding that defendant's encounter with police was voluntary where, inter alia, passengers were advised that cooperation was not required). After addressing passengers from the front of the bus, Garcia made a conscious decision to

begin his inspection at the back of the bus so that he would not block the aisle if passengers wanted to exit.[7] The record does not show that Pilcher or VanScoten did or said anything to discourage passengers from getting out of the bus.

Further, there is no evidence that Garcia or the other officers harassed or intimidated Solano-Rodriguez in any way. Garcia "did not brandish a weapon or make any intimidating movements." *Drayton*, 536 U. S. at 204. Garcia's encounter with Solano-Rodriguez was brief and nonthreatening. He simply asked Solano-Rodriguez two questions, to which Garcia received an affirmative response. Garcia testified that from the time he boarded the bus to the time he discovered cocaine in Solano-Rodriguez's bag, only two minutes elapsed.

In arguing that a seizure occurred, Solano-Rodriguez principally relies on the fact that the bus was stopped at a commuter's park-n-ride, not a bus stop, and alternative transportation was unavailable. Even at a bus stop, however, a passenger may be reluctant to disembark if a bus is about to leave and thus risk being stranded and losing baggage. See *Bostick*, supra, 501 U. S. at 435. "A bus rider's movements are confined in this sense, but this is the natural result of choosing to take the bus; it says nothing about whether the police conduct is coercive." *Drayton*, supra, 536 U. S. at 201-202. Likewise, we conclude that Solano-Rodriguez's possible hesitance to get off the bus resulted from his chosen mode of travel, not police conduct, and did not require the trial court to conclude that a seizure had occurred. See *United States v. Wilmington*, 131 Fed. Appx. 336, 2005 U. S. App. LEXIS 4559, at **8 (3rd Cir. 2005) ("[T]he passengers' wish to continue their travel on the bus when stopped at a toll booth is not, on its own, confinement in violation of the Fourth Amendment.").

Taking into account all of the foregoing circumstances, we conclude that the trial court was authorized to find that no seizure occurred and that a reasonable person would have felt "free to decline [Garcia's] requests or otherwise terminate the encounter." *Bostick*, supra, 501 U. S. at 436.

2. Solano-Rodriguez contends that the trial court erred in denying his motion to suppress his statements to Garcia on the bus, which consisted of answering "yes," when Garcia asked Solano-

---

[7] Although Garcia wore plain clothes and was not visibly armed, the U. S. Supreme Court has held that "those factors should have little weight in the analysis," reasoning that "[o]fficers are often required to wear uniforms[,] and in many circumstances this is cause for assurance, not discomfort," and "[m]uch the same can be said for wearing sidearms." *Drayton*, supra, 536 U. S. at 204-205.

Rodriguez if the bag belonged to him and then asked for permission to search the bag. We disagree.

Solano-Rodriguez argues that "[b]ecause he was seized" and "was not read any *Miranda* rights," his statements should have been suppressed. *Miranda* warnings are not required when an individual is "seized" but rather "when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest." (Citation and punctuation omitted.) *Jennings v. State*, 282 Ga. 679, 680 (3) (653 SE2d 17) (2007). "Unless a reasonable person in the suspect's situtation would perceive that he was in custody, *Miranda* warnings are not necessary." (Citations omitted.) Id.; see also *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001). In view of the facts discussed in Division 1, the trial court did not clearly err in concluding that Solano-Rodriguez was not in custody at the time he answered Garcia's two questions and that Solano-Rodriguez's statements were admissible.

3. Finally, Solano-Rodriguez claims that the trial court erred by failing to give a request to charge his counsel submitted that addressed the questions the jury must answer before considering a defendant's post-arrest statement as evidence, namely (1) whether the defendant was warned of his or her constitutional rights under *Miranda* and clearly understood and gave up those rights and (2) whether the defendant's statement was clearly voluntary. We disagree.

Solano-Rodriguez's counsel argued that the instruction was appropriate to guide the jury in determining whether it could consider Solano-Rodriguez's responses to Garcia's questions on the bus. The trial court found that the charge was not warranted because it was designed to cover a post-arrest statement, and Solano-Rodriguez's statements on the bus were not made while he was in "custody" or under arrest. As discussed above in Division 2, the trial court was authorized to conclude that Solano-Rodriguez was not in custody when Garcia approached him and asked two questions. As such, the trial court did not err in failing to give the requested charge, as it was "not reasonably raised by the evidence." *Scanlon v. State*, 237 Ga. App. 362, 366 (5) (514 SE2d 876) (1999); see also *McMichen v. State*, 265 Ga. 598, 606 (11) (c) (458 SE2d 833) (1995) (similar instruction not warranted when "[n]o statement admitted at trial was arguably the result of custodial interrogation").

For the reasons set forth above, we affirm the trial court's order denying Solano-Rodriguez's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 10, 2009.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney*, for appellee.