### A10A1167. TAYLOR v. THE STATE.
(700 SE2d 841)

McMURRAY, Senior Appellate Judge.

An officer discovered methamphetamine in the backseat of his patrol car immediately after transporting James Russell Taylor to jail. A jury found Taylor guilty of possession of methamphetamine, and the trial court denied his motion for a new trial. On appeal, Taylor contends that the trial court erred by denying his motion for a directed verdict of acquittal; by allowing the testimony of a state's witness whose name was not disclosed to the defense prior to voir dire; and by allowing similar transaction evidence because the notice of the state's intent to introduce such evidence did not fully comply with Uniform Superior Court Rule ("USCR") 31.3. For the reasons set forth below, we affirm.

1. We review the denial of a motion for a directed verdict of acquittal under the same standard applicable to a challenge to the sufficiency of the evidence. *Jackson v. State*, 236 Ga. App. 260 (511 SE2d 615) (1999). "Under that standard[,] we view the evidence in the light most favorable to the jury's verdict and determine whether

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) Id. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in this light, the evidence showed that in the late afternoon of March 21, 2006, a patrol officer with the Georgia Department of Public Safety stopped an extended cab pickup truck pulling a trailer with an improperly secured forklift. The truck had three occupants, including Taylor, who was the owner of the truck and was riding in the front passenger seat. After making the stop, the officer approached the truck in order to address the commercial vehicle safety violation with the driver.[1] The officer asked the driver to exit from the truck and observed that he was unsteady on his feet, was sweating heavily, and had red eyes, such that the driver appeared to be under the influence of some type of drug. Based upon his observations, the officer returned to his patrol car and radioed for backup.

A state trooper arrived shortly thereafter. Both the state trooper and patrol officer approached the truck and noticed the odor of marijuana coming from inside the cab. The patrol officer then asked the other two occupants to step out of the truck and requested that Taylor consent to a search of its interior after learning that he was the owner. Taylor said that there was "nothing in there" and consented to the search of his truck.

Once Taylor gave consent, the state trooper searched the truck and found a homemade smoking pipe containing residue that field tested positive for methamphetamine. The pipe was located directly under the front passenger seat where Taylor had been sitting and was wrapped in a towel.

All three occupants of the truck were arrested. The patrol officer patted them down for weapons, had them empty their own pockets, and handcuffed them. Taylor was placed in the back of the patrol officer's car, where he sat by himself for approximately 30 minutes until his truck was towed. At one point, the officer noticed that although Taylor's hands were handcuffed behind his back, Taylor had retrieved his cell phone and had succeeded in making a telephone call. After the truck was towed, the officer transported Taylor

---

[1] The Georgia Department of Public Safety is charged with enforcing federal motor carrier regulations, which have been adopted under Georgia law, and officers of the department have authority to stop commercial vehicles for safety inspections. See *Solano-Rodriguez v. State*, 295 Ga. App. 896, 896-897, n. 2, 3 (673 SE2d 351) (2009). It is undisputed that Taylor's truck was a commercial vehicle subject to federal motor carrier regulations and that the forklift was not secured properly under those regulations. See OCGA § 46-7-39 (a); 49 CFR § 393.70.

to jail alone in the back of the patrol car, while the other two occupants were transported to jail in the state trooper's vehicle.

Immediately after Taylor was handed over to the jailer, the patrol officer searched the backseat of his patrol car by looking underneath the seat padding, around the carpet, and in any crevices. The officer testified that he searches his patrol car in this way because suspects will sometimes discard contraband in the backseat rather than attempt to cross the guard line at the jail with it. The officer further testified that he had exclusive use of his patrol car and remained with his car when it was being serviced by third parties.

During his search of the backseat, the officer found a bag of white powder directly up under the seat where Taylor had been sitting. The white powder field tested positive for methamphetamine and weighed approximately 0.8 grams. A forensic chemist with the state crime lab later tested the powder and confirmed that it was methamphetamine.

Taylor was charged by accusation and tried before a jury for possession of methamphetamine.[2] The patrol officer, the state trooper, and the forensic chemist testified at trial, and the state also introduced similar transaction evidence in the form of Taylor's guilty plea to a prior drug charge in order to show plan, intent, bent of mind, and course of conduct. In contrast, Taylor took the stand and denied that the methamphetamine belonged to him or that he had discarded it in the patrol car. After hearing all of the evidence, the jury convicted Taylor of the charged offense. The trial court denied Taylor's motion for a new trial, and this appeal followed.

Challenging the sufficiency of the state's evidence, Taylor contends that the circumstantial evidence presented by the state failed to exclude the reasonable hypothesis that the methamphetamine was discarded in the patrol car by someone else. Taylor emphasizes that his spatial proximity to the methamphetamine in the patrol car was insufficient to support his conviction. Taylor further points out that he was searched and handcuffed with his hands behind his back before being placed into the patrol car, and that the officer never testified that he checked the backseat for contraband at the beginning of his shift or every time he transported a suspect.[3]

---

[2] Taylor also was charged with possession and use of a drug-related object based upon the smoking pipe found in his truck, but the jury acquitted him of that offense.

[3] Taylor also asserts that there was evidence that inmates sometimes washed the officer's patrol car and contends that the state failed to exclude the hypothesis that one of the inmates placed the methamphetamine in the car while washing it. We have reviewed the trial transcript, however, and the only reference to car washing in the testimony is where the patrol officer acknowledged in response to a question on cross-examination that "trustees" sometimes wash his patrol car. But the officer never defined or explained the term "trustees." Even if the jury could have inferred that "trustees" were inmates, the jury was entitled to reject as

It is true that in order to sustain a conviction based solely upon circumstantial evidence, "the proved facts [must] not only be consistent with the hypothesis of guilt, but [must] exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. But the circumstantial evidence "need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." (Emphasis in original.) *Merritt v. State*, 285 Ga. 778, 779 (683 SE2d 855) (2009). And "[t]he question of whether the circumstances in a case are sufficient to exclude every reasonable hypothesis favorable to the accused is primarily a jury question." *Gresham v. State*, 246 Ga. App. 705, 707 (2) (541 SE2d 679) (2000). Moreover, while mere spatial proximity to contraband is insufficient to exclude the possibility that someone else possessed the drugs, spatial proximity combined with other evidence, such as evidence of the defendant's possession of drug paraphernalia or of similar transactions, will support a conviction for drug possession. See *Eubanks v. State*, 239 Ga. App. 796, 797 (1) (522 SE2d 240) (1999) (defendant's possession of crack pipe was additional evidence beyond mere spatial proximity that supported conviction for possession of cocaine); *White v. State*, 225 Ga. App. 74, 76 (3) (483 SE2d 329) (1997) (holding that "[t]he similar transaction evidence provided proof of intent sufficient to negate beyond a reasonable doubt [defendant]'s claims of mere presence and equal access").

Mindful of these principles, we conclude that the totality of the evidence, although circumstantial, was sufficient to authorize a rational jury to find Taylor guilty beyond a reasonable doubt of possession of methamphetamine and to reject as speculative and unreasonable the hypothesis that someone else discarded the drugs in the patrol car. *Jackson*, 443 U. S. 307. See OCGA § 16-13-30 (a); *Simmons v. State*, 299 Ga. App. 21, 22-23 (1) (a) (681 SE2d 712) (2009) (sustaining conviction based upon drugs found in backseat area of police car); *Tate v. State*, 230 Ga. App. 186, 186-187 (1) (a) (495 SE2d 658) (1998) (same). Taylor ignores the significant circumstantial evidence that he possessed the methamphetamine found in the backseat of the patrol car, including evidence that he possessed the homemade smoking pipe containing methamphetamine residue and the similar transaction evidence.[4] Furthermore, the patrol

---

unreasonable the assertion that an inmate who had been successful in getting methamphetamine past the jail guards would then hide it in a patrol car and watch the officer drive away with it.

[4] Although the jury acquitted Taylor of possession and use of a drug-related object based upon the smoking pipe in his truck, Georgia does not recognize the inconsistent verdict rule. See *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). Hence, a defendant "may not use his acquittal on one count to challenge the factual findings of guilt on a separate count." *Roberts v. State*, 277 Ga. App. 730, 732 (627 SE2d 446) (2006). See *Amis v. State*, 277 Ga. App.

officer testified that he had exclusive control of his patrol car, that he stayed with his car whenever it was serviced by third parties, that he searched the backseat immediately after Taylor exited from the car, and that he discovered the drugs directly up under the seat where Taylor had been sitting.

While Taylor points out that he was searched and handcuffed following his arrest, there was testimony from which the jury could have found that Taylor nevertheless was able to conceal the methamphetamine from the patrol officer and had the dexterity to discard it in the backseat before arriving at the jail. In this respect, there was testimony that the officer only performed a pat-down search for weapons before placing Taylor in the patrol car; that Taylor had been permitted to empty his own pockets at the time of his arrest; that Taylor was alone in the backseat of the patrol car for approximately 30 minutes until his truck was towed; and that Taylor had succeeded in making a cell phone call even after his hands had been handcuffed behind his back.

In light of this combined evidence, the trial court correctly denied Taylor's motion for a directed verdict of acquittal on the charge of possession of methamphetamine. Having heard the witnesses and observed them testify, the jury was in a better position than the trial court or this Court to assess witness credibility, resolve any conflicts in their testimony, and judge the reasonableness of any hypothesis produced by the circumstantial evidence. See *Gresham*, 246 Ga. App. at 707-708 (2). As this Court has emphasized, "we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors." (Footnote omitted.) Id. at 707 (2).

2. Voir dire was conducted and a jury selected in the instant case on April 30, 2008. The trial was set for May 9, 2008. On May 1, 2008, the state filed a supplemental witness list that included the name of a new witness.

On the day of trial, Taylor objected to allowing the new witness to testify in light of the state's disclosure of the witness less than ten days before trial. See OCGA § 17-16-8 (a).[5] The state responded that

---

223, 224-225 (1) (626 SE2d 192) (2006) (defendant's acquittal of the underlying offense of battery did not negate the evidence that his children witnessed an act of battery for purposes of sustaining his conviction of cruelty to children); *Mullady v. State*, 270 Ga. App. 444, 447 (2), 448 (3) (606 SE2d 645) (2004) (defendant's acquittal of the offense of speeding did not negate the evidence that he was speeding for purposes of sustaining his conviction of driving under the influence to the extent that he was a less safe driver).

[5] OCGA § 17-16-8 (a) provides:

The prosecuting attorney, not later than ten days before trial, . . . shall furnish to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses, unless for

the witness would be made available for Taylor to interview, but Taylor did not request an opportunity to interview the witness prior to the commencement of trial. Taylor further argued that the belated disclosure of the new witness deprived him of his right to adequately examine potential jurors during the voir dire proceedings, since he had not been afforded an opportunity to question the entire jury panel about the witness.

In response to Taylor's argument concerning voir dire, the trial court allowed Taylor to question the selected jury and the alternate juror about the new witness. Their answers reflected that none of them knew or had any relationship or connection with the witness. The trial court subsequently permitted the state's new witness to testify over objection.

(a) Taylor contends that the trial court erred in allowing the new witness to testify since the state failed to disclose the witness at least ten days before trial in violation of OCGA § 17-16-8 (a). Evidence exclusion, however, is a severe sanction that requires a showing of bad faith by the state and prejudice to the defense. See *Cockrell v. State*, 281 Ga. 536, 539 (3) (640 SE2d 262) (2007); *Rosas v. State*, 276 Ga. App. 513, 518 (2) (624 SE2d 142) (2005). It is usually a sufficient remedy for the defense to be afforded an opportunity to interview the witness. See *Cockrell*, 281 Ga. at 539 (3). Here, Taylor does not contend that the state acted in bad faith, instead acknowledging in his appellate brief that he believes that the state's failure to provide the name of the witness was unintentional. Furthermore, Taylor did not seek an opportunity to interview the witness despite the state's invitation for him to do so. Under these circumstances, the trial court did not abuse its discretion in allowing the new witness to testify at trial. See *Cockrell*, 281 Ga. at 539 (3); *Gabriel v. State*, 280 Ga. 237, 239-240 (4) (626 SE2d 491) (2006); *Rosas*, 276 Ga. App. at 518-519 (2).

(b) Taylor also maintains that the state's late disclosure of the witness hindered his ability to conduct an adequate voir dire of prospective jurors. The improper denial of a criminal defendant's right to examine prospective jurors during voir dire does not result in a new trial if the error was harmless. See *Napier v. State*, 276 Ga. 769, 774 (4) (583 SE2d 825) (2003). Because the trial court permitted Taylor to voir dire the selected jury and alternate concerning the new witness, and since their responses demonstrated that none of them knew or had ever heard of the witness, it is highly improbable that

---

good cause the judge allows an exception to this requirement, in which event the counsel shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify.

any alleged error in voir dire had an impact upon the guilty verdict in this case. Given that the alleged error was harmless, Taylor has failed to assert a valid basis for reversal. See id. See also *McPherson v. State*, 274 Ga. 444, 449 (7) (533 SE2d 569) (2001); *Brown v. State*, 161 Ga. App. 729, 730 (2) (288 SE2d 866) (1982); *Griffeth v. State*, 154 Ga. App. 643, 643-645 (1) (269 SE2d 501) (1980).[6]

3. Prior to trial, the state filed a notice of its intent to present similar transaction evidence but did not attach a copy of the accusation and Taylor's guilty plea relating to the prior offense. At the hearing on the similar transaction evidence, Taylor argued that evidence of his prior drug conviction should be excluded in light of the omission of the accusation and guilty plea from the state's notice. The state then attempted to rectify the problem by providing Taylor with copies of the omitted documents, which the state had only recently obtained. The trial court allowed the introduction of the similar transaction evidence over objection.

Taylor argues that the state's failure to attach the accusation and guilty plea to the notice violated USCR 31.3, and that, as a result, the trial court should have excluded the evidence. USCR 31.3 (B) provides that the state's notice of its intention to present evidence of similar transactions

> shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced. Copies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice.

"The purpose of the rule is to provide the defendant with fair and adequate notice of the listed transactions so that questions of admissibility may be raised and addressed prior to trial." *Jackson v. State*, 217 Ga. App. 485, 489 (4) (b) (458 SE2d 153) (1995). If the defendant received adequate notice of the similar transactions prior to trial, then he was not prejudiced by the state's failure to comply fully with the requirements of USCR 31.3, and any alleged error was harmless. See id. That is the situation here.

---

[6] Taylor's reliance upon *Martin v. State*, 168 Ga. App. 623, 624-625 (2) (309 SE2d 899) (1983), is misplaced. In that case, a prospective juror failed to reveal during voir dire that she knew one of the witnesses and that her daughter-in-law was related to the witness. See id. at 624 (2). The juror was later selected and served on the jury, which found the defendant guilty of the charged offenses. See id. The present case, in contrast, does not involve a situation where a selected juror who participated in the jury's deliberations and verdict remained silent or was untruthful with respect to a material issue during voir dire. Compare *Inman v. State*, 281 Ga. 67, 74 (6) (635 SE2d 125) (2006), with *Martin*, 168 Ga. App. at 624-625 (2).

Taylor's counsel entered the present case in September of 2007. The prosecutor informed the court that since that time, she had a number of discussions with defense counsel about Taylor's prior drug conviction as part of plea negotiations. Furthermore, in one of these discussions, the prosecutor and defense counsel went through Taylor's criminal history in his Georgia Crime Information Center report, and the prosecutor specifically informed defense counsel that she thought the state might seek to introduce the similar transaction evidence if the case went to trial. Additionally, the similar transaction notice filed by the state included information identifying the similar transaction, including the date of occurrence, the county in which it occurred, the case number, and the date of the guilty plea, as well as a list of potential witnesses who had been involved in the case and their contact information. And as noted, the prosecutor provided a copy of the indictment and guilty plea to defense counsel on the day of trial when the omission was addressed.

Given these circumstances, the trial court was authorized to conclude that Taylor received adequate notice of the similar transactions prior to trial and thus was not prejudiced by the state's failure to attach the accusation and guilty plea to its notice. See *Davidson v. State*, 232 Ga. App. 250, 251 (1) (501 SE2d 510) (1998); *Sweatman v. State*, 181 Ga. App. 474, 474-475 (1) (352 SE2d 796) (1987). It follows that the trial court committed no error in allowing the introduction of the similar transaction evidence. See id.

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED AUGUST 30, 2010.

*Hugh J. McCullough*, for appellant.
*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.