## WHOLE COURT

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A2241. OWENS v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for possession of methamphetamine and other crimes, Stanli Owens argues that the evidence was insufficient as to the methamphetamine charge and that the trial court erred in its instructions to the jury. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the evidence at trial showed that on December 11, 2005, at about 1:30 a.m., Officer Kem Pugh of the Donalsonville Police Department observed the left and right blinker lights of a van alternating and the van drive through an intersection after hesitating. Officer Pugh also noticed that the van's tag light was inoperable. Officer Pugh called for backup and initiated a stop of the van, parking his patrol car directly behind the van. Officer Douglas Owens arrived as Officer Pugh was exiting his car and walking to the driver's side door of the van; Officer Owens parked his vehicle behind Officer Pugh's and activated his overhead lights.

There were three occupants of the van: the driver, a front seat passenger, and a passenger who sat on the floor in the back of the vehicle. Officer Pugh asked the driver, whom Officer Pugh identified at trial as the defendant Owens, for his driver's license and proof of insurance. The officers determined that Owens's license was suspended, and they arrested him. The officers handcuffed Owens, who then emptied his own pockets. Officer Pugh patted Owens down, found nothing, and placed him in Officer Owens's patrol car. The officers searched the van but found no contraband there. Before he was arrested, Owens informed Officer Pugh that he and the front seat

2

passenger, Robby Johnson, had earlier consumed alcoholic beverages and that Johnson owned the van but was too drunk to drive. Officer Owens testified that he knew both passengers and that their licenses to drive had been suspended. Neither passenger was arrested or otherwise detained. The back passenger was allowed to walk to his mother's residence, which was nearby, so that she could return to the scene and drive the van away.

Video recordings of the stop were played for the jury. One video was taken from the camera in Officer Pugh's patrol vehicle; the other was taken from the camera in Officer Owens's patrol vehicle. The first video recording showed that moments after refusing to take a breath test, but just before being placed under arrest for DUI and driving without a valid license, Owens tossed or dropped a white object onto the ground just behind the right foot of the officer placing Owens under arrest. The same video recording also showed that within a few moments after his arrest, Owens began calling out to passenger Johnson; asked the officer whether he could "talk to [his] boys" before sitting in the patrol car; called out to Johnson again, asking him to "come here"; and then attempted to kick something under the patrol car. A few minutes later, as the same officer placed a handcuffed Owens in the rear driver's side seat of the patrol car, Owens made movements with his hands consistent with discarding another

3

object. Some time after the officer closed the rear driver's side door, Johnson walked by that side but some distance away from the patrol car and made a gesture at Owens.

The second recording shows Johnson walking towards the patrol car after Owens had been placed in the back seat. As Johnson approached, Owens called out, "Robby, hey, look"; when Johnson continued walking past the car, Owens responded by cursing and calling Johnson an "idiot."

Later, as both officers walked away from the van and toward the patrol vehicles in preparation for leaving the scene, Officer Owens shone his flashlight on the ground and found a clear plastic bag containing a white substance that later tested positive for methamphetamine. The bag was found on the ground outside the door of the patrol car through which Owens had been placed.

Owens was charged with methamphetamine possession, driving with a suspended license, and defective equipment. A jury found Owens guilty of all three charges, and he was convicted. His motion for new trial was denied.

1. Owens first argues that the evidence was insufficient to sustain his conviction for possession of the methamphetamine found outside the door of the patrol car. We disagree.

In a drug possession case based upon circumstantial evidence, the State must adduce evidence establishing a "meaningful connection" between the defendant and

the drugs. *In re E. A. D.*, 271 Ga. App. 531, 532 (610 SE2d 153) (2005). "Mere presence, without proof of participation, is insufficient to support a conviction. Rather, the state must show that the defendant had the power and intent to exercise control over the [drugs]." (Footnote omitted.) *Stevens v. State*, 245 Ga. App. 237, 238 (1) (537 SE2d 688) (2000). Further, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Citation omitted.) *Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).

Under these authorities, the evidence was sufficient to sustain Owens's conviction for possession of the methamphetamine at issue. Specifically, it was for the jury to decide whether the only reasonable hypothesis as to the origin of the drugs found just outside the door of the patrol car was that Owens had dropped them there. Given the evidence that Owens began dropping objects and calling out to his

5

companions at the moment his arrest was announced, and that he continued his efforts to alert those passengers as he sat in handcuffs in the back of the patrol car, this jury was authorized to conclude that Owens discarded the bag of methamphetamine later found beside the rear driver's side door of the patrol car and that his attempts to enlist his passengers' help in kicking discarded drugs under or away from the same side of the patrol car were unsuccessful. Likewise, the jury had some evidence to support its verdict because Owens was the only occupant of the car near the methamphetamine at the time it was dropped and had an exclusive opportunity for control of the drug. It follows that Owens's conviction for methamphetamine possession must be affirmed. See OCGA § 16-13-30 (a) (outlawing possession of methamphetamine); *Taylor v. State*, 305 Ga. App. 748, 751 (1) (700 SE2d 841) (2010) (circumstantial evidence of possession was sufficient to authorize a conviction for possession of methamphetamine "and to reject as speculative and unreasonable the hypothesis that someone else discarded the drugs in [a] patrol car") (citations omitted).

2. Owens also argues that the trial court erred when it charged the jury on the crime of methamphetamine possession without explaining that the State had the burden of proving that Owens had spatial proximity to and had exercised control over the drugs at the time they were found. We disagree.

6

The record shows that the trial court instructed the jury that the State was obligated to prove Owens's guilt, as to each essential element of the charged offenses, including intent, beyond a reasonable doubt; that a defendant's mere presence at the scene of a crime did not authorize a guilty verdict "unless the evidence shows beyond a reasonable doubt that such person committed the alleged crime"; and that a guilty verdict based on circumstantial evidence "must not only be consistent with the theory of guilt, but also exclude every other reasonable theory other than the guilt of the accused." The trial court then charged the jury that "it is unlawful for any person to possess or have under one's control any quantity of methamphetamine, which is a controlled substance." There is no indication that Owens asked for any specific instruction on the topics of his proximity to or control over the contraband at issue.

This record shows that the trial court instructed the jury on the elements of methamphetamine possession and on the law of circumstantial evidence, mere presence and reasonable doubt. Because "[u]pright and intelligent jurors would have no difficulty in understanding the meaning of a simple word like 'possession,'" a trial court has no responsibility to give any detailed definition of the term, even when the gravamen of the case is a drug charge based on constructive possession. (Punctuation omitted.) *Sullivan v. State*, 204 Ga. App. 274, 276 (2) (418 SE2d 807) (1992); see also

7

*Donaldson v. State*, 180 Ga. App. 879 (1) (350 SE2d 849) (1986). Georgia courts have also held repeatedly that "'mere presence at the scene of the crime is not a recognized defense to a criminal charge. Rather, the rule that mere presence without more is insufficient to convict is really a corollary to the requirement that the state prove each element of the offense charged.'" (Punctuation omitted.) *Russell v. State*, 289 Ga. App. 789, 792 (2) (658 SE2d 400) (2008), quoting *Kelley v. State*, 279 Ga. App. 187, 189 (2) (630 SE2d 783) (2006) and *Muhammad v. State*, 243 Ga. 404, 406 (1) (254 SE2d 356) (1979). Finally, and even when a defendant requests a charge on spatial proximity, a trial court does not err in refusing to give such a charge when the jury instructions as a whole, including charges on requisite intent and a mere conjecture of guilt, "adequately covered that principle." (Citation omitted.) *Smoot v. State*, 316 Ga. App. 102, 115 (7) (729 SE2d 416) (2012). Owens's assertions to the contrary thus lack merit.

3. All outstanding motions in the case are denied.

*Judgment affirmed. Andrews, P. J., Barnes, P. J., and Ray, J., concur. Phipps, C. J., Ellington, P. J., and Miller, J., concur in part and dissent in part.*

A13A2241. OWENS v. THE STATE.

PHIPPS, Chief Judge, concurring in part and dissenting in part.

I fully concur in Divisions 2 and 3 of the majority opinion, but respectfully dissent to Division 1 because I believe that the circumstantial evidence was insufficient to support Owens's (Appellant's) conviction for possession of methamphetamine, and it did not exclude the reasonable hypotheses that the methamphetamine was discarded by the front seat passenger, another motorist, or a pedestrian.

> [T]he relevant question on appeal from denial of the general grounds of a motion for new trial is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] The *Jackson* standard of review is applied so that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

proof -- defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."[2]

The video recording taken from Officer Owens's vehicle showed that after Appellant exited the van and walked back to Officer Pugh's patrol vehicle, he spoke calmly with the officers, explaining that he and the passengers had just finished moving a washing machine or dryer to earn some money. After Appellant was placed in Officer Pugh's patrol vehicle, both officers walked to the van, and Officer Owens conversed with the front seat passenger. The officers later walked back to Officer Owens's vehicle, passing the door of Officer Pugh's vehicle through which Appellant had been placed. Less than 30 seconds later, the front seat passenger walked past that same door of Officer Pugh's patrol vehicle through which Appellant had been placed, and the front seat passenger made a motion with his hand. About 40 seconds later, the front seat passenger and an officer walked to that same door of Officer Pugh's vehicle; the officer opened the door of the patrol vehicle, as the front seat passenger stood on

---

[2] *Walker v. State*, 247 Ga. 746, 748-749 (2) (280 SE2d 333) (1981), citing *Jackson*, supra. After his convictions for possession of methamphetamine, driving while his license was suspended, and driving a vehicle with defective equipment, Owens moved for a new trial, which the trial court denied.

the other side of the door. Seconds later, the officer closed the door; both officers and the front seat passenger walked to the van.

Later, as both officers walked away from the van and toward the patrol vehicles, Officer Owens shone his flashlight on the ground and found a bag containing a white substance that later tested positive for methamphetamine. The bag was found on the ground, outside the door of the patrol vehicle through which Appellant had been placed. Less than two minutes later, the van was driven away.

The front seat passenger was never searched. Neither passenger was questioned about the methamphetamine recovered at the stop, and neither passenger testified at trial. No effort was made to test the bag for fingerprints. At trial, Officer Pugh testified that he did not see Appellant drop anything on the ground. Officer Owens testified that he did not see Appellant commit a crime.

The trial court denied Appellant's motion for a new trial, finding that as it concerned the possession of methamphetamine charge, "the evidence . . . prove[d] more than spatial proximity because defendant was both spatially near the drugs, and was the only person to be near the drugs in the timeframe they were dropped. The defendant had exclusive opportunity for control."

3

"Possession of contraband may be . . . actual or constructive."[3]

A person may be found to have had constructive possession of contraband if it is shown that he had both the power and the intention at a given time to exercise dominion or control over it. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than mere spatial proximity.[4]

Beyond a defendant's spatial proximity to the drugs, constructive possession may be shown by demonstrating the defendant knowingly had both the power and intention at a given time to exercise control over the substance. Power may be inferred from access to the drugs, while the matter of intent may be derived from the surrounding circumstances.[5]

In *Brown v. State*,[6] as a police officer approached a defendant in front of a house, the defendant ran away, breaking lawn ornaments in his flight and disregarding officers' commands to stop. Officers chased the defendant, tackled him to the ground, and handcuffed and arrested him. When they lifted the defendant from the ground, an

---

[3] *Herberman v. State*, 287 Ga. App. 635, 637 (1) (653 SE2d 74) (2007) (punctuation and footnote omitted).

[4] *Aquino v. State*, 308 Ga. App. 163, 165 (1) (706 SE2d 746) (2011) (citation and punctuation omitted).

[5] *In the Interest of Q. P.*, 286 Ga. App. 225, 226-227 (648 SE2d 731) (2007) (footnote omitted).

[6] 314 Ga. App. 212 (723 SE2d 504) (2012).

officer found what appeared to be a crack pipe, lying on the ground nearby. The pipe was dry although the surrounding area was wet from a recent rain. The pipe tested positive for traces of cocaine.[7] The defendant, convicted of possession of cocaine, challenged the sufficiency of the evidence to show that he had possessed the pipe.[8] Holding that the state had presented evidence other than the defendant's mere spatial proximity to the pipe containing cocaine to show that he had constructive possession over it, the court stated:

> The pipe was dry, although it had been raining and the surrounding area was "soaked"; from this evidence the court as factfinder could infer that the pipe had been on the ground for a very short period of time. In addition, the state introduced similar transaction evidence that [the defendant] had been carrying a small crack pipe in the pocket of his jacket on the occasion of an earlier arrest.[9]

In *Wright v. State*,[10] this court held that the evidence established a meaningful connection between a defendant and contraband which showed that the defendant had

---

[7] Id.

[8] Id. at 213 (2).

[9] Id. at 213-214 (2) (citations omitted).

[10] 302 Ga. App. 332 (690 SE2d 654) (2010).

5

exercised power and dominion over drugs not found on his person.[11] In that case, police officers apprehended the defendant after pursuing him from the scene of a shooting; when they caught him he had crawled partly underneath the front end of a car. After arresting the defendant, officers located a large amount of cash in his pockets and drugs inside the wheel well of the car; the drugs were within arm's-reach of the defendant; and no one but the defendant had been under the car since his apprehension.[12] Moreover, the bag in which the drugs were placed did not appear dirty, weathered, or damp; thus, the jury could infer that the drugs had been recently placed in the wheel well.[13]

In this case, the van driven by Appellant was stopped for a traffic violation. Appellant spoke calmly with the officers, explaining what he and the passengers had just finished doing and admitting that he and one of the passengers had earlier consumed alcoholic beverages. Neither officer saw Appellant throw or drop anything on the ground; and there was no testimony that either officer saw Appellant make a throwing motion, either as Appellant was being detained and placed in the patrol

---

[11] Id. at 334.

[12] Id. at 332-334.

[13] Id. at 334.

vehicle or when one of the officers later opened the door of the patrol vehicle through which Appellant had been placed. Neither video recording of the stop showed either Appellant or the front seat passenger throwing anything on the ground; nor does either video show anything being thrown or dropped onto the ground where the methamphetamine was found. Neither passenger testified at trial. And although the state argued to the jury that inclement weather or traffic would have damaged the methamphetamine had it been on the ground before the traffic stop, the state presented no testimony as to the weather conditions around that time period or of the amount or type of traffic common to the road.

Citing *Taylor v. State*,[14] the state argues that Appellant's suspicious driving, use of profanity, and admission to the officers that he had been moving a heavy appliance at a late hour, showed that he was under the influence of methamphetamine and thus connected Appellant to the methamphetamine found at the scene. But *Taylor* is distinguishable. In that case, this court affirmed a defendant's conviction for possession of methamphetamine discovered in the back seat of a patrol vehicle immediately after the defendant, who had been sitting in the back seat, had been transported to jail. The transporting officer testified that he (the officer) had exclusive

---

[14] 305 Ga. App. 748 (700 SE2d 841) (2010).

7

use of his patrol car and remained with it when it was being serviced by third parties; police recovered directly under the front passenger seat of a truck where the defendant had been sitting, a smoking pipe containing residue that tested positive for methamphetamine; and the state presented, as a similar transaction, evidence of a prior drug conviction.[15] In this case, the front seat passenger of the van had twice walked past the area where the methamphetamine was found, there was no evidence of other drugs or drug paraphernalia found on or within Appellant's immediate presence or in the van, and the state presented no evidence of similar transactions.

The majority opinion states that the video recording taken from Officer Owens's vehicle depicts an object falling to the ground during the traffic stop. While it is true that an unidentified object fell to the ground during the stop, that object was not the contraband that the officers later recovered which formed the basis for the possession of methamphetamine charge. Although the majority opinion states that Appellant had dropped the object, the identity of the person who threw the object on the ground is not discernable from the video. And in any event, even if Appellant threw it on the ground, the video shows that from the time the object landed on the ground to the end of the video, it remained on the ground where it initially landed, in

_____

[15] Id. at 749-750 (1).

8

an area (the front end of the patrol vehicle) different from where the contraband was recovered (the rear door of the patrol vehicle, almost underneath the vehicle).

The majority opinion's finding that Appellant "attempted to kick something under the patrol car," is simply not depicted on the video; to the extent that the video shows Appellant moving his feet toward the roadway as he was standing, such act occurred at the front end of the patrol vehicle, an area (as already stated) different from where the contraband which formed the basis for the possession of methamphetamine charge was found. The majority opinion states that as Appellant was being placed in the patrol vehicle, he made movements with his hands consistent with discarding an object. However, had Appellant discarded anything at that time, it would have been apparent from the video because the video depicted an unobstructed view of his hands at the time he was being placed in the patrol vehicle. The video does not show anything falling or dropping from his hands. Thus, the evidence the majority opinion relies on could not be construed to have supported the jury's verdict of guilty.

The conduct upon which the state relies does not show, in addition to spatial proximity, the connection necessary to establish that Appellant had both the power and intention at the time of his arrest to exercise dominion or control over the drugs.[16]

> Where, as here, the state's constructive possession case is based wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. The burden to present evidence excluding every other reasonable hypothesis save that of guilt rests upon the state.[17]

> Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused, is primarily a question for determination by the [finder of fact.] . . .

---

[16] Compare *Brown*, supra; *Taylor*, supra; *Wright*, supra at 332-334; *McBee v. State*, 296 Ga. App. 42, 43-46 (2) (a) (673 SE2d 569) (2009) (conviction for possession of methamphetamine affirmed where defendant/vehicle passenger was moving his hands around and under his seat in defiance of officer's instructions, defendant's connection to a lighter and a pipe found under seat and that later tested positive for drugs was based on more than mere spatial proximity; moreover, defendant had told police officer that he was looking for a lighter, and a syringe was found in the defendant's pocket); *Hester v. State*, 261 Ga. App. 614-615 (1) (583 SE2d 274) (2003) (evidence held sufficient for possession of cocaine conviction where police officers observed the defendant engaging in what appeared to be a drug transaction, chased and apprehended the defendant, and discovered cocaine on the ground where defendant had been standing, and cocaine residue in defendant's pocket); *Walker v. State*, 208 Ga. App. 690-692 (1) (431 SE2d 459) (1993).

[17] *In the Interest of J. S.*, 303 Ga. App. 788, 789-790 (694 SE2d 375) (2010) (punctuation and footnotes omitted).

> However, this court as a court of law, where there appears a hypothesis from the evidence, or from the lack of evidence . . . pointing to the innocence of the accused, and which tested by all human experience is a reasonable one, may declare it so as a matter of law.[18]

In my opinion, the evidence did not exclude the reasonable hypotheses that the methamphetamine was discarded by the front seat passenger, another motorist, or a pedestrian.[19] Accordingly, I would conclude that the state failed to meet its burden, and reverse Appellant's conviction for possession of methamphetamine.

I am authorized to state that Presiding Judge Ellington and Judge Miller join in this opinion.

---

[18] *Harris v. State*, 236 Ga. 242, 244-245 (1) (223 SE2d 643) (1976) (citation and punctuation omitted).

[19] See generally *Aquino*, supra at 166-168 (1); *In the Interest of J. S.*, supra at 788-791 (1).